[No. 8315.   Department Two.   January 8, 1910.]

CASCADE LUMBER COMPANY, *Respondent*, v. AETNA
INDEMNITY COMPANY, *Appellant*.[1]

MECHANICS' LIENS—BONDS ON PUBLIC WORK—NOTICE—FORM.  A
notice by a materialman to a surety on the bond of a contractor on
a public building, stating a claim *against the building* for material
furnished to the principal contractor, complies, in substance, with
Laws 1899, p. 172, § 1, which requires the notice to state claims
*against the bond*.

SAME—TIME FOR FILING—STATUTES—CONSTRUCTION.  Under Laws
1899, p. 172, § 1, providing that no action shall be commenced by
materialmen against the surety on the bond of a contractor on
public work "unless within thirty days from and after the comple-
tion of the contract and an acceptance of the work" notice be filed,
the claimant need not wait until the work is completed and accepted
before filing notice of claim, where the contract was abandoned; nor
need the notice be filed within thirty days after abandonment by the
contractor where it was not completed or accepted; as the statute
only fixes the time after which notice cannot be given.

EVIDENCE—DOCUMENTARY EVIDENCE—BOOKS OF ORIGINAL ENTRY.
In an action against a contractor's surety by materialmen, books
kept by the contractors in the ordinary course of business, from slips
furnished the bookkeeper by different persons making delivery of
the materials, are competent as books of original entry to show the
amount of material furnished for certain buildings, although the
business manager testifying as to the entries had no personal knowl-
edge of the transactions.

Appeal from a judgment of the superior court for Yaki-
ma county, Preble, J., entered April 26, 1909, upon findings
in favor of the plaintiff, in an action upon the bond of a
contractor upon public work, after a trial before the court
without a jury.   Affirmed.

*Peters & Powell* and *Wende & Taylor*, for appellant, to
the point that the time for the filing of the notice was upon
the abandonment of the building, cited: *Catlin v. Douglass*,
33 Fed. 569; *Davis v. Bullard*, 32 Kan. 234, 4 Pac. 75;
*Shaw v. Stewart*, 43 Kan. 572, 23 Pac. 616; *Chicago Lum-*

[1]Reported in 106 Pac. 158.

*ber Co. v. Merrimac River Sav. Bank*, 52 Kan. 410, 34 Pac. 1045; *Hutchins v. Bautch*, 123 Wis. 394, 101 N. W. 671, 107 Am. St. 1014; *Basham v. Toors*, 51 Ark. 309, 11 S. W. 282; *McCarthy v. Groff*, 48 Minn. 325, 51 N. W. 218; *Naughton & Dolan State Co. v. Nicholson*, 97 Mo. App. 332, 71 S. W. 64; *Lynn v. New York & N. E. R. Co.*, 127 Mass. 101.

*Englehart & Rigg*, for respondent, contended, among other things, that the notice was in time. *Merchants' & Traders' Nat. Bank v. New York*, 97 N. Y. Ct. of Appeals, 355; *Catlin v. Douglass*, 33 Fed. 569; *Sanborn v. Fireman's Ins. Co.*, 16 Gray 448, 77 Am. Dec. 419; *Davies v. Miller*, 130 U. S. 284, 9 Sup. Ct. 560, 32 L. Ed. 932; *Young v. The Orpheus*, 119 Mass. 179; *Atherton v. Corliss*, 101 Mass. 40; *Levert v. Read*, 54 Ala. 529; *Cary-Lombard Lumber Co. v. Fullenwider*, 150 Ill. 629, 37 N. E. 899; *French v. Powell*, 135 Cal. 636, 68 Pac. 92.

MOUNT, J.—On or about June 8, 1907, James Gibson and W. Wellington Smith, copartners doing business under the name of Gibson & Smith, entered into a written contract with school district No. 7, of Yakima county, Washington, for the construction of a high school building for such school district, for the sum of $84,990. The building was to be completed on or before the 15th day of December, 1907. On the 8th day of June, 1907, Gibson & Smith, and the Aetna Indemnity Company as surety, entered into a bond with the state of Washington, conditioned that Gibson & Smith would pay all laborers, mechanics, subcontractors, materialmen, and all persons who supplied the contractor or subcontractors with provisions and supplies for constructing the said building, and also all debts, dues, and demands incurred in the performance of the above-named contract. Gibson & Smith entered upon the construction of the building under their contract, and prosecuted the work until the 30th day of October, 1907, when Smith withdrew and Gibson thereafter continued

the work until the 21st day of January, 1908, when he wholly abandoned the work, and the building was still uncompleted at the time of the bringing of this action by the plaintiff. While the work was in progress, the Cascade Lumber Company, the Yakima Hardware Company, and Garrett Brothers Company furnished material to Gibson & Smith to be used in the building. On November 21, 1907, the Cascade Lumber Company executed and filed with the board of school directors, and served upon Gibson & Smith and the Aetna Indemnity Company, the following notice:

"To the Board of Directors of School District No. 7, Yakima County, Washington; School District No. 7, North Yakima, Yakima County, Washington; Gibson & Smith and James Gibson, and the Aetna Indemnity Company, 68 Williams Street, New York.

"The undersigned, the Cascade Lumber Company, a corporation, hereby notifies you that it has a bill against the high school building in the city of North Yakima, Yakima County, Washington, for material, etc., furnished to the builders thereof, to wit: Messrs. Gibson & Smith and James Gibson, to be used in said high school building, amounting to five thousand two hundred and fifty and 36-100 dollars ($5,250.36). We would like to have this account straightened up so that we shall not be compelled to take any legal steps to protect the same, which we shall be compelled to take unless this matter is adjusted. A copy of the bill for material etc., furnished, has this day been filed with the board of directors of said school district No. 7, at North Yakima, Yakima county, Washington, where the same can be seen.
          "Cascade Lumber Company, By A. H. Huebner."

Thereafter on April 14, 1908, the said lumber company served and filed in the same manner the following notice, omitting the address, which is the same as in the notice above copied:

"Notice is hereby given that the undersigned, the Cascade Lumber Company, a corporation, organized and existing under the laws of the state of Washington, has a claim in the sum of five thousand two hundred fifty dollars and thirty-six cents ($5, 250.36), against the bond taken from James

Gibson and W. Wellington Smith, copartners as Gibson & Smith, as principals, and the Aetna Indemnity Company, a corporation, existing under and by virtue of the laws of the state of Connecticut, as surety, for materials furnished to and for the use of said James Gibson and W. Wellington Smith, copartners as Gibson & Smith, and James Gibson as successor in interest of said Gibson & Smith, in the construction of that certain school building in said school district No. 7 of Yakima county, Washington, commonly known as the high school, as follows, to wit: Materials consisting of lumber, windows, doors, sash, mill work, and other building material of a like kind.   Dated at North Yakima, Washington, this 14th day of April, 1908.
"Cascade Lumber Company, By A. H. Huebner, Manager."

Under date of January 7, 1908, the Yakima Hardware Company filed in the same manner a similar notice to the last named, except in the amount claimed, which was $646.02. On the 3d day of February, 1908, Garrett Brothers Company filed a claim substantially similar to the first claim above copied, and on April 14, 1908, Garrett Brothers filed another claim, substantially as the one last copied above, except in the amount, which was $324. The claims of the Yakima Hardware Company and Garrett Brothers were assigned to the Cascade Lumber Company, and the latter company, as plaintiff, brought suit in the superior court of Yakima county against Gibson & Smith and James Gibson upon the contract, and against the Aetna Indemnity Company upon its bond to recover these several amounts, with interest, setting up in the complaint that they had filed their notices of claim on the bond with the board of school directors as hereinbefore set forth. Gibson & Smith did not appear in the case.

Defendant Aetna Indemnity Company appeared and filed a general demurrer, which was overruled. That company then filed an answer, admitting the execution of the bond and of the contract; denied, upon information and belief, all knowledge with respect to furnishing of materials by the claimants or any knowledge as to the merits of their claims.

As an affirmative defense, it alleged that, on or before the 21st day of November, 1907, while these claimants had due notice of the default and abandonment of the contract by the contractors, they made no claim on the bond within thirty days after the abandonment of the contract. To this affirmative defense the plaintiff demurred, and the demurrer was sustained. The cause was then tried upon the merits, and the court found for the plaintiff, on the first cause of action, in the sum of $4,706.60; upon the second cause of action, in the sum of $214.88; upon the third cause of action, in the sum of $144; in the aggregate of which sums judgment was rendered in favor of plaintiff and against all of the defendants. From this judgment, the defendant Aetna Indemnity Company has appealed.

The appellant contends that the notices first filed were insufficient in form, for the reason that there is no declaration therein of intention to claim upon the bond, and that these notices were prematurely filed because they were filed before the work was abandoned and before the work was completed and accepted by the board. Section 5925, Bal. Code, provides for the giving of a bond by a contractor for public work for the benefit of the materialmen and laborers. The amendment of 1899, Laws of that year, page 172, provides:

"That such persons shall not have any right of action on such bond for any sum whatever, unless within thirty (30) days from and after the completion of the contract with and acceptance of the work by the board . . . the . . . person claiming to have supplied materials, . . shall present to and file with such board . . . a notice in writing in substance as follows: . . Notice is hereby given that the undersigned . . has a claim in the sum of —— dollars . . against the bond taken from . . . for the work of . . . ."

In *Huggins v. Sutherland*, 39 Wash. 552, 82 Pac. 112, in construing this section, we said:

"The statute clearly makes the right to maintain the action upon the bond depend upon the notice provided for

therein. This provision was for the benefit of the sureties on the bond. Their liability thereon ceased as to the class of persons designated, if no such notice or claim was filed within the time."

It is true that the notices filed and served upon the Aetna Indemnity Company November 21, 1907, do not say specifically that the materialmen have a claim against the *bond*. But they do say that the claimant has a bill against the high school building for materials furnished to the builders to be used in the building, and the amount thereof. The notices were addressed to the surety company, and served upon it. These notices were the *substance* of the notice provided for by the statute. When it was addressed to and served upon the surety, that company must have known that the notice was given to them solely by reason of the bond, and that the claimants meant thereby to claim against the bond. The surety company could not have been misled thereby. These notices were therefore sufficient under the statute.

It is next argued that the first notices were premature because they were given before the work was abandoned and before the work was completed and accepted. The work had not been completed or accepted at the time the notices were given, or at the time this action was begun. The record does not show that the building is yet completed. The statute says that the claimant shall not have a right of action on such bond "unless within thirty days from and after the completion of the contract and an acceptance of the work," the claimant shall file his notice. Conceding that the abandonment of the work amounted to a completion and acceptance thereof so far as materialmen were concerned, we are of the opinion that the statute only fixes the time after which the notices may not be filed. The words *"from and after,"* as here used, indicate when the time begins to run and when it ends, for the purposes of computation only; that is, the time began to run and included the day the work was completed. Vol. 4, Words & Phrases, pp. 2986-7. These

words do not indicate that the notice must be filed after the completion of the work and before the expiration of thirty days, as contended by appellant. The object of the statute is notice to the surety that the claimant intends to hold the surety. Notice given before the completion of the work would be as effective for that purpose as notice given after the completion thereof. The statute was not intended as a trap and, unless the words used clearly show an intention that the notice shall be filed at a certain time, it should be construed so as to effect its object with fairness. In this case we are of the opinion that the statute does not prevent the filing of the notice prior to the time of the completion or abandonment of the work, and that the first notice was therefore not premature. Appellant seeks to avoid the second notices filed upon the ground that they were not filed within thirty days after the abandonment of the work by the contractors. In view of our holding upon the first notice it is unnecessary to consider this point. The second notices were merely given to cure the defect in the first notices, that no claim was made against the bond.

Certain books of the contractors were admitted in evidence at the trial. Appellant claims that these books were incompetent to show the amount of material furnished, by reason of the fact that the general manager who testified concerning the entries therein had no personal knowledge of the transaction. The books were kept in the ordinary course of business by the contractors. These books were competent to show the fact that the materials were ordered and received. 17 Cyc. 366; Greenleaf, Evidence (16th ed.), § 187; Wigmore, Evidence, § 1077. The fact that slips or memoranda were made out by persons delivering and receiving the material, and that such slips were used by the bookkeeper in making the original entries in the books, did not, in our opinion, take away the character of the books as books of original entry. The evidence is also sufficient, we think, to support the findings that the material was furnished and used in the

building to the amount of the judgment.   The other points discussed in the briefs are of no merit or importance, and need not be noticed further.

There is no error in the record, and the judgment is therefore affirmed.

RUDKIN, C. J., CROW, DUNBAR, and PARKER, JJ., concur.