[No. 11612. Department One. August 14, 1914.]

## WASHINGTON MONUMENTAL & CUT STONE COMPANY, *Respondent*, v. M. C. MURPHY *et al.*, *Appellants*.[1]

CONTRACTS—BUILDING CONTRACTS—PERFORMANCE OR BREACH—CONSTRUCTION. An agreement "to recut all granite now on the building grounds that can possibly be used, and to furnish, cut and deliver on said building grounds all new Spokane granite that may be necessary to complete" certain steps, platforms, and granite courses shown by the plans, is plainly an agreement to recut only such granite then on the grounds as could be used for the purposes stated.

SAME—AMBIGUITY—CONSTRUCTION—"STEPS" AND "BUTTRESSES"— EVIDENCE—SUFFICIENCY. Where plans and specifications referred to in a subcontract for the stone work in a building provided for buttresses flanking the steps and platforms, the buttresses are not a part of the steps and the contract for cutting the granite for the "granite steps, platforms, and the two granite courses," does not include the cutting of granite for buttresses as well, where the contract was unambiguous in excluding all things not enumerated, and neither the contract nor the specifications contained anything that would tend to indicate that the word "steps" was used in a generic or technical sense, and the evidence failed to show any custom of builders that buttresses are to be considered a part of the steps and assumed to be made of the same material unless otherwise designated in the specifications; but, on the contrary, it was conclusively shown, by expert witnesses, that buttresses were usually made of the same material as the wall against which they abut, rather than of the material used in constructing the steps, and that a contract like the one in question would be construed as not including the cutting of granite for buttresses, and it was further shown that, at the time the plans and specifications were prepared and the contract let, it had not been fully decided that the buttresses should be of granite, there being evidence that an extra bid for cutting granite for the buttresses was subsequently requested.

[1]Reported in 142 Pac. 665.

MUNICIPAL CORPORATIONS—IMPROVEMENTS—CONTRACTOR'S BONDS—
ACTIONS—CONDITION PRECEDENT—NOTICE OF LIEN—TIME FOR FILING.
The filing of a notice of lien by a subcontractor after completion of
his work on a school building, but before formal acceptance by the
school board of work under the general contract, is a compliance
with Rem. & Bal. Code, § 1161, which fixes thirty days after accept-
ance as the limit beyond which an effective notice of claim cannot
be filed against the contractor's bond; since the statute was intended
to fix a limit beyond which the notice of claim cannot be filed, and
not a limit before which its filing would be ineffectual.

Appeal from a judgment of the superior court for Spo-
kane county, Webster, J., entered April 22, 1913, upon find-
ings in favor of the plaintiff, in an action on contract, tried
to the court. Affirmed.

*Cannon, Ferris & Swan* and *Samuel R. Stern*, for appel-
lants.

*Post, Avery & Higgins*, for respondent.

ELLIS, J.—Action by a subcontractor against the princi-
pal contractor and his statutory bondsman, for work done by
plaintiff upon a public building under its subcontract. On
January 5, 1911, the defendant Murphy entered into a writ-
ten contract with the city of Spokane School District No. 1,
to erect a high school building in that city and furnish all
the materials and labor therefor. An old school building on
the same site had been destroyed by fire. It seems to be con-
ceded that the general contractor had the right to use un-
injured granite remaining on the ground in the construction
of the new building. Pursuant to the statute, Rem. & Bal.
Code, § 1159 *et seq.* (P. C. 309 § 93), the general contractor
executed a bond, with the defendant Pacific Coast Casualty
Company as surety, in an amount equal to the full contract
price, conditioned, among other things, that the defendants
would pay all laborers, mechanics, subcontractors and ma-
terialmen, and all just debts, dues and demands incurred in
the performance of the work. The bond was delivered to the
school board and filed with the auditor of Spokane county as

required by statute.  On January 23, 1911, the plaintiff submitted to the defendant Murphy a bid for a subcontract for certain granite work, as follows:

"We will furnish, cut and deliver on building grounds, granite steps and platforms and the two granite courses around the building as shown for the sum of forty-eight hundred twelve dollars ($4812).  In this estimate we have figured on using all the granite, already on the ground, that can be possibly used.  We also figure on using this rock face course just as it is, with the exception of putting on the returns and fitting."

On February 7, 1911, pursuant to this bid, Murphy and the plaintiff entered into a written contract, the portions of which material here are as follows:

"The party of the first part, [the plaintiff] agrees to recut all granite now on the building grounds that can be possibly used and to furnish, cut and deliver on said building grounds all new Spokane Granite that may be necessary to complete all granite steps, platforms, and the two granite courses as shown, as per plans and specifications of the New Central High School, of Spokane, for the sum of forty-eight hundred dollars ($4800).

"In consideration of the fulfillment of the above the party of the second part [defendant Murphy] agrees to pay the party of the first part the above named sum of forty-eight hundred dollars—paying 85% on the tenth of each month, of the amount then cut and delivered on building grounds, and the final payment to be made in full within thirty days after the last stone has been delivered on the building grounds and accepted by the architect.

"Party of the second part also agrees to take down granite from the old walls and pile it in a suitable place so the granite cutters of the party of the first part can do the necessary cutting."

The plaintiff entered upon the work and completed cutting the granite for the two granite courses, the steps and platforms, in accordance with the terms of its contract.  The plaintiff claims that this was all that its contract called for. The defendant Murphy claims that the contract included the

cutting of granite for the buttresses as well. The school board, at a meeting held March 30, 1912, passed a resolution as follows:

"On motion of Mr. Long, it was voted to allow Mr. Murphy the balance on general contract on the Lewis & Clark High School up to 95% of the total amount, amounting to $12,-270. And it was further voted to accept the building, as far as interior construction, as per recommendation of Architect Rand. . . ."

It is admitted that no further action was taken by the board, except that, on May 13, 1912, the board paid the defendant Murphy the balance due on his general contract. On June 10, 1912, the plaintiff filed with the school board his claim in statutory form against the bond for the unpaid balance of the contract price stated in his contract for cutting granite. The plaintiff also claimed a small item for extra work in recutting some of the granite, necessitated by an error of the defendant Murphy, and $411 for cutting granite used in the buttresses flanking the steps.

At the conclusion of the evidence, the court made findings of fact and conclusions of law, which, in effect, sustained the plaintiff's contention that its contract did not contemplate buttresses as a part of the work; that it had substantially performed its contract, and was entitled to the balance of the contract price, and to pay for the additional work except that done on granite for the buttresses. Judgment was entered against the defendants in the sum of $1,251.03, and costs, from which they prosecute this appeal.

Both of the appellants insist that the judgment should be reversed because the evidence failed to show that the respondent had fully performed its contract. The casualty company insists, that, in any event, the action should be dismissed as to it, because there had been no formal acceptance of the exterior work on the school building by the school board at the time the respondent filed its claim against the bond.

I.   The appellants' argument under the first head is two-fold.   It is first asserted that, by the terms of its contract, the respondent agreed "to recut all granite now on the building grounds that can possibly be used."   It is said that it has not done this, hence has not completed its contract.   This fragment is lifted bodily from the sentence of which it forms a part, without even so much as a separation by comma, much less by period.   Taken in context, this language was clearly intended to evidence an agreement to recut only such granite then on the grounds as could be used for the purposes set out in the remainder of the same sentence with which it is used in the conjunctive, "and to furnish, cut and deliver on said building grounds all new Spokane granite that may be necessary to complete all granite steps, platforms and the two granite courses as shown, as per plans and specifications," etc.   The obvious purpose of requiring the use of all old granite possible was to minimize the cost to the subcontractor. This phase of the argument hardly merits further notice.

It is next urged that, inasmuch as the plans and specifications referred to in the contract provided for buttresses flanking the steps and platforms, the buttresses are a part of the steps and therefore the contract included the cutting of the granite for these as well as for the "granite steps, platforms and the two granite courses."   Here again the conclusion comes perilously near being abortive for lack of sufficient premises.   The contract itself would hardly seem ambiguous, since, by particularizing the things included: steps, platforms, and courses, it excluded all things not enumerated.   If the word "steps" was used in some broad generic sense, as including everything in any way related to the steps proper, so as to include the buttresses, why use the word "platforms" at all?   They, at least, are in a sense steps, while the buttresses are not.   It is a matter of common knowledge that a platform in a stairway is, both in use and position, but a broader step or tread.   A buttress, though sometimes employed as a balustrade, would hardly perform the office of a step in any connec-

tion.    Nor is it clear that any ambiguity was imported into
the contract by its reference to the plans and specifications.
An examination of the plans of the school building shows the
words "granite steps" with an arrow pointing to the steps
alone, i. e., the treads.    The lower base course is marked "fine
axed granite" and the upper course is marked "stone."    A
front cross section shows the legend, immediately below the
upper course (which is referred to in evidence as the base
mold), and above the buttress, "all work below base mold to
be of stone."    Even the sheet showing the details for the but-
tresses, steps, and platforms fails to show that the buttresses
are to be of granite.    The steps and platforms are shaded in
such a way as to indicate that it was the original intention
that they should be made of a different material from the but-
tresses.    There is nothing whatever, either in the written
plans or in the specifications, which would tend to indicate
that where the word "steps" is used in the contract it should
be construed in a generic or technical sense.    The trial court
was, however, of the opinion that, in the light of the specifica-
tions, the contract was ambiguous, and admitted parol testi-
mony for the purpose of construing it.    This testimony sig-
nally failed to sustain the appellants' construction.    The testi-
mony on behalf of the appellants was directed to an effort to
prove that it is not usual to designate steps and buttresses
separately in making or receiving bids; that, where the speci-
fications call for buttresses, steps would not be considered
complete without buttresses, and that it is usual for the but-
tresses to be made of the same material as the steps, rather
than of the same material as the wall against which they abut.

The appellant Murphy testified to all these things; but,
after stating that the buttresses are a part of the steps, he
also said that the steps are a part of the buttresses, thus neg-
ativing the idea that either term is generally regarded as a
generic term including the other where only one is used.    His
superintendent on this work also testified to most of these
things, but finally admitted that ordinarily the buttresses are

made of the same material as the wall against which they abut even where the steps are of different material, thus negativing the idea that a bid to cut stone for steps would ordinarily include cutting stone for buttresses. He also testified that the bid in this case, as he understands it, "refers to and includes the buttresses," because he never heard any one say that the buttresses were to be of anything but granite; clearly a mere conclusion, not founded either on the bid itself, the contract, or the specifications. When asked to show where the specifications called for granite buttresses, he merely pointed out the fact that the base course which runs all round the building was marked "fine axed granite" and ran through the buttresses.

The architect on the building also testified that, when the plans call for buttresses, the steps are not considered complete without them; that it was intended all along to use granite for the buttresses on this building; that in making and receiving bids, it is not usual to designate steps and buttresses separately unless they are to be made of different materials, and that it is usual for the buttresses to be constructed of the same material as the steps. He finally admitted, however, that whether a buttress shall be of the same material as the steps or of the same material as the wall of the building against which it abuts is, in each instance, "just as the architect decides what he wants," thus negativing the idea of any such general custom as that which his testimony was offered to establish. He also testified that, in this case the material of which the buttresses were to be made was not indicated on the plans and specifications; that it should have been, but was overlooked. None of these witnesses, save the architect, could recall a single building the buttresses of which are not of the same material as the wall though the steps are of different material. He instanced the Spokane county court house as an example, but it transpired that he was mistaken. He testified that he told all bidders that the buttresses in this case were to be of granite, but admitted that he spoke to the respond-

ent's president about it between the middle of April and August, 1911, some months after the respondent's bid was made and the contract entered into. It will thus be seen that, even considering the appellants' evidence alone, no custom of builders was established that buttresses are usually considered a part of the steps and assumed to be made of the same material unless differently designated in the specifications, so that one bidding to cut stone for steps would expect to be required to cut stone for buttresses also. In short, even with the aid of parol evidence, the appellants wholly failed to import into the contract any ambiguity as to what the bid and contract reasonably contemplated.

We deem it unnecessary to discuss the evidence introduced in behalf of the respondent on this subject further than to say that several expert witnesses, contractors of long experience, testified to the effect that it is much more usual for buttresses to be of the same material as the wall against which they abut than of the same material as the steps which they border, and that a contract calling for the cutting and delivery of all granite, "that may be necessary to complete all granite steps, platforms, and two granite courses as shown as per plans and specifications," in the light of plans and specifications such as found in this case, would be construed as not including the cutting of granite for buttresses. Taken as a whole, the evidence seems to us overwhelming in this particular. Some ten photographs of entrances to different public buildings, office buildings, school buildings, churches, apartments, etc., in the city of Spokane, all showed the buttresses made of different material from that of the steps and, in every instance, of the same material as the wall of the building. There was also evidence strongly tending to show that, at the time the plans and specifications were prepared and the contract let to the respondent, it had not been fully decided that the buttresses should be of granite.

The respondent's president testified that, about June 20, 1911, he had a conversation with the appellant Murphy, who

then asked him to put in an additional bid for the buttresses; that he prepared a bid of $1,192 for that work, and handed it to Murphy, who read it, put it in his pocket, and said, "I will let you know later;" that afterwards, respondent began cutting stone for the buttresses under direction by 'phone from Murphy's office, assuming therefrom that its second bid was accepted; that when, afterwards, Murphy refused to enter into a contract for the buttresses, the respondent ceased work thereon. The appellant Murphy denied this, but only in a qualified way. The respondent included in its complaint $411 for this work, which the court did not allow. Upon the whole record, we are persuaded that the judgment of the court was perhaps more favorable to the appellants than, under the evidence, they had the right to expect.

II. It is admitted that there had been no formal acceptance of the exterior work on the school building by the school board when the respondent filed its claim against the contractor's bond. The court found, however, that on May 13, 1912, the work was fully performed and accepted by the school district, and that the respondent's claim was filed within thirty days thereafter. This was based upon the admitted fact that final payment on the general contract was made on May 13, implying a final acceptance of the work. We find it unnecessary to decide that this was such an acceptance as contemplated by the statute, Rem. & Bal. Code, § 1161 (P. C. 309 § 97), in order to sustain this judgment. The statute which fixes thirty days after acceptance as the limit beyond which an effective notice cannot be filed, was never intended to declare invalid a notice filed by a subcontractor after the completion of his own work but before the final acceptance of the general contract as completed. The statute was intended to fix a limit beyond which the notice of claim cannot be filed, not to fix a limit before which its filing would be ineffectual. *Cascade Lumber Co. v. Aetna Indemnity Co.*, 56 Wash. 503, 106 Pac. 158. The purpose of the statute was fully met by the respondent when, after completion of its own contract, it filed

its claim at a time short of thirty days after acceptance of the whole work covered by the general contract, whether the final payment by the school district be regarded as equivalent to a formal acceptance or not. There is nothing in our recent decision in the case of *Wheeler, Osgood Co. v. Fidelity & Deposit Co.*, 78 Wash. 328, 139 Pac. 53, contrary to the view here expressed. We there held that a claim presented more than thirty days after acceptance of the building by the architect was too late, which is, of course, a very different thing from holding that presenting the claim before a formal acceptance would be too early to be effective under the statute.

The judgment is affirmed.

CROW, C. J., CHADWICK, MAIN, and GOSE, JJ., concur.