[No. 12958.   Department One.   October 5, 1916.]

DENNY-RENTON CLAY & COAL COMPANY, *Appellant*, v.
NATIONAL SURETY COMPANY *et al.*, *Respondents.*[1]

MUNICIPAL CORPORATIONS—IMPROVEMENTS — CONTRACTOR'S BOND—
RIGHT OF ACTION—FILING CLAIM—TIME—ACCEPTANCE OF WORK—STAT-
UTES.   Where, upon the completion of a city contract, the city engi-
neer furnished a certificate of completion, specifying the amount
then due and the ten per cent reserve which would fall due thirty
days later under the contract, and on the same day the city council
ordered that the same be allowed and a warrant drawn for the
amount then due, there was an acceptance of the completed work at
that time, without regard to a later "final estimate" and order for
a warrant for the final reserve payment; hence a claim upon the
contractor's bond, filed more than thirty days after completion of the
work, is too late, under Rem. & Bal. Code, § 1161, providing that
there shall be no action on the bond unless the claim is filed within
thirty days from the completion of the contract and acceptance of
the work.

APPEAL—REVIEW—PRESUMPTIONS.   Error cannot be assumed on
the failure to enter personal judgment against a defendant upon an
asserted default, where there is nothing in the record to show that
he was personally served or that his default was ever entered.

Appeal from a judgment of the superior court for Chelan
county, Grimshaw, J., entered January 14, 1915, upon find-
ings in favor of the defendants, in an action on contract,
tried to the court.   Affirmed.

*Ballinger, Battle, Hulbert & Shorts* and *Reeves, Crollard
& Crollard,* for appellant.

*Williams & Corbin* and *John W. Roberts,* for respondents.

ELLIS, J.—Plaintiff, as a materialman, brought this ac-
tion upon the bond given by the original contractor under the
provisions of Rem. & Bal. Code, Title VIII, ch. 6, § 1159
*et seq.*, as security for labor and materials furnished in the
prosecution of a public work.

[1]Reported in 160 Pac. 1.

The material facts are not seriously disputed. The contract was let to defendant McNerney by the city of Wenatchee for the improvement of Wenatchee avenue and other streets in that city, on April 24, 1913. Defendant National Surety Company became his surety on the statutory bond, which in form and amount complied with the statute. Plaintiff furnished to the contractor brick blocks which went into the work and for which there is a balance due from the contractor amounting to $4,489.19. The contract contains provisions as follows:

"Section 1. . . . Said improvements shall be made under the superintendence of the city engineer of said city, and subject to the acceptance and approval of the city council, and the same shall be completed within the time fixed in the annexed specifications, and stipulations under the penalty therein provided. Said party of the second part shall furnish all skill, labor and material required for the complete performance of this contract and shall produce a completed improvement.

"Section 6. That during the time allowed in the contract for the completion of the work and on or about the 10th day of the month following the issuance of the estimate by the city engineer, the city clerk shall deliver to the contractor a warrant in an amount equal to ninety per cent of such estimate, and the balance of said contract price being ten per cent of such estimate, shall be retained for a period of thirty days after the final completion of the improvement, and no improvement shall be deemed completed until the city engineer shall have filed with the city clerk a statement declaring the same to have been completed. But neither said statement nor any acceptance of said work by the city council shall prevent the city from thereafter making claim for uncompleted or defective work if the same is discovered within two years from the completion and acceptance of the work. No payment shall be issued to the contractor in any event for any part of said ten per cent reserve until the city engineer shall certify to the city clerk that the thirty days since the completion of the work have elapsed, and that no uncompleted or defective work has been discovered for which the city makes claim. . . .

"Section 7. That in case no lien is claimed against said ten per cent so reserved during said thirty days, and no uncompleted or defective work shall have been discovered and reported by the city engineer during said time, then the ten per cent required to be held as a reserve to protect laborers and material men shall, at the expiration of said thirty days, be paid to the contractors in warrants. But in case notice of such liens is given the city during said period, by or on behalf of any person claiming such lien, or in case the city engineer shall report any claim of the city by reason of uncompleted or defective work, then the amount of all liens so claimed shall be reserved by the city until final determination of such lien claims, and the cost of perfecting such uncompleted or defective work shall be retained until such uncompleted or defective work shall have been perfected or arranged to the satisfaction of the city engineer.  .  .  .

"Section 8. That no estimate will be issued after the time allowed in the contract for the completion of the work, except the complete and final estimates."

The specifications provided that the work should be done and fully completed "in accordance with the plans and specifications and to the satisfaction of the city engineer"; that the contractor shall conform to the directions of the city engineer; that if changes be made "the city engineer shall estimate the amount to be allowed therefor and his decision shall be final and conclusive." Many other provisions appear in the specifications as well as in the contract, showing that the fullest authority of supervision and control of the work was vested in the city engineer.

The last piece of brick pavement was laid, grouted with cement and covered with tarpaulin on the afternoon of November 25, 1913. On the same evening the city engineer furnished to the contractor what is designated as the "complete estimate," certifying in terms that the job was then "one hundred per cent completed" and that the contractor was entitled to $10,041.57. This sum was ninety per cent of the contract price then remaining unpaid. This complete estimate or certificate of completion also conveyed the informa-

tion that a final payment of $16,856.17 would be due December 23, 1913. This sum, it is admitted, was the ten per cent stipulated in sections 6 and 7 of the contract to be held up by the city for thirty days after completion of the work to meet any defective work or claims for labor or material which might arise during such thirty days. Though the city clerk at first intimated that this was never filed in his office, he afterwards admitted that it was, and that it was the usual and only form of certificate of completion ever filed in any local improvement proceeding in the city. Moreover, the evidence is conclusive that, on the evening of November 25, it was presented to and acted upon by the city council by an order as follows:

"Moved and seconded, that the engineer's estimate of work completed by J. J. McNerney on Wenatchee Avenue, and other streets, amounting to the sum of $10,041.57, be allowed, and that a warrant be drawn for the amount; carried."

The city engineer testified, in substance, that he then explained to the city council that the work was then completed, but that the ten per cent should be held up for the further period of thirty days.

On December 23, 1913, the city engineer filed his so-called "final estimate," referring to the complete estimate of November 25, 1913, for the details, and showing the same final balance due of $16,856.17, and stating that warrants should not be issued for that sum until December 25, 1913, when the thirty-day period would expire. The council thereupon made the following order:

"Moved and seconded that the final estimate of work done on Wenatchee Avenue and other streets by contractor McNerney, amounting to the sum of $16,856.17, be allowed and a warrant drawn for the amount, the surrender of said warrant to J. J. McNerney to be subject to the approval of the city attorney. Carried."

On January 2, 1914, plaintiff filed with the city clerk its claim against the bond. This was within thirty days after

the filing of the final estimate but more than thirty days after the filing of the complete estimate.

The trial court found in substance that the contract was completed and the work accepted by the city council on November 25, 1913, and that the plaintiff's notice was tardy. A decree was accordingly entered dismissing the action as against Ed. S. Russell and National Surety Company. Plaintiff appeals.

The sole question is this: When was the contract completed and the work accepted by the city council? The statute in force when this bond was given and when the action was tried and judgment rendered, Rem. & Bal. Code, § 1161, provided that no laborer or materialman shall have any right of action on the bond "unless within thirty days from and after the completion of the contract with and acceptance of the work by the board, council," etc., he shall present and file with such board, council, etc., a notice in writing in substantial compliance with the form in the statute prescribed. The statute as amended in 1915 requires acceptance by "affirmative action" of the board or council. Laws of 1915, p. 62, § 2; Rem. 1915 Code, § 1161. The amending act of 1915 provides that the amendments shall be retroactive. We entertain grave doubt as to the constitutionality of this retroactive provision, but in any event the amendments were not the law when the judgment here assailed was rendered, hence cannot affect it.

It will be noted that the statute makes no provision for the holding up of any portion of the contractor's pay for any time after the completion of the contract and acceptance of the work. That provision is found only in the contract. The holding up of the ten per cent, estimated in both the complete estimate and the final estimate, therefore must be referred to the contract, not to the statute. Both the bond and every right which can be asserted under it is referable solely to the statute. There can be no question but that, on November 25, 1913, the date of the engineer's complete certificate, the

work was in fact substantially completed.   The evidence shows that nothing further was done except what is called "cleanup work," such as removing unused bricks, removing the tarpaulins and sand from the pavement and removing tools and lumber used in the work.   The engineer then certified that the work was completed—"one hundred per cent complete." Upon his finding that it was completed, he based his estimate of the sum then due—ninety per cent of the entire balance of the contract price—and certified this to the council for approval and payment by warrant.   In the same certificate he included an estimate of the ten per cent to be held up under the terms of sections 6 and 7 of the contract until "thirty days since the completion of the work has expired."   The order of the council, based upon this certificate and estimate, referred to the matter as "work completed."   The action of the council in ordering the complete estimate of ninety per cent paid as certified by the engineer was the only action of the council ever taken directly upon this certificate of completion.   That action necessarily implied an acceptance of the work as then completed as certified.   If affirmative action be held now necessary, we think that this was such an affirmative recognition of the work as completed as to constitute an acceptance.   The very fact that the ten per cent was held up for only thirty days after this affirmative action upon the engineer's complete estimate, when interpreted in the light of the contract (to which alone the holding up is referable, since the statute contains no authority for holding up anything for any time), is in itself a recognition by the city council that the contract had been completed thirty days before the final estimate was to be paid.

Even aside from any affirmative action on the part of the city council, this case is controlled by our decision in the case of *Wheeler, Osgood Co. v. Fidelity & Deposit Co.*, 78 Wash. 328, 139 Pac. 53.   In that case we held that, because the contract gave the architect control of the work and provided for the payment on the architect's certificate, an ac-

ceptance by the architect was an acceptance by the board of control, in that the contract itself, by reason of the broad powers which it gave to the architect, made him the board's agent to accept the work.  A comparison of the contract there with the contract here convinces us that the powers conferred on the city engineer in this case were fully as broad as those conferred on the architect in that case.  In other respects the case here is much stronger on the facts in favor of respondent than was the case in favor of the bondsmen there.  In that case, there was no affirmative action of the board on the final estimate of the architect, which was made on December 6, 1912, except to pass the final estimate voucher on December 23; yet we held that the work was accepted on December 6 because on that date the architect had certified completion.  In the case now in hand, the city council actually approved the complete estimate of November 25, 1913, which also included the final ten per cent estimate of $16,856.17, on the same day that it was made.  The so-called final estimate, furnished on December 23, was no more than the final estimate voucher involved in the *Wheeler, Osgood Company* case for the percentage which under the contract alone, not under any provision of the statute, had been held up.  Clearly, under the contract, the council's order to pay this balance recognized the work as completed thirty days before.  Every element of acceptance found in the *Wheeler, Osgood Company* case is found here, with an added element of the affirmative action of the city council approving and paying the ninety per cent estimate based upon the engineer's certificate and advice that the contract was then one hundred per cent completed.

The facts and the law involved in the *Wheeler, Osgood Company* case were passed upon by this court in three cases —in that case, in the case of *Union Iron Works v. Strauser,* 82 Wash. 51, 143 Pac. 446, and in the case of *McGowan Brothers Hardware Co. v. Fidelity & Deposit Co.,* 84 Wash. 470, 147 Pac. 44.  In the first two of those cases exhaustive

petitions for rehearing were filed, which, after mature consideration, were denied. The only possible material distinction between the facts of those cases and the facts here is, as we have noted, in favor of respondent here. There is no distinction whatever between the law of those cases and the law of the case here. All arose under the same statute. From a reading of those cases it is too clear for cavil that, on the facts here, either the certificate of completion made by the city engineer on November 25, 1913, was a final acceptance in law which the city could not dispute, or the action of the council on the same evening in passing and paying the ninety per cent complete estimate was such an affirmative action recognizing the work as completed as to meet the express terms of the statute as an acceptance. In either event, as pointed out in the *Wheeler, Osgood Company* case, a legal acceptance binding as between the city and the principal contractor is binding also upon the materialman. The fact that the "cleanup work" was done after the engineer certified that the work was one hundred per cent completed is immaterial. As we said of a similar insignificant item in the *McGowan Brothers Hardware Company* case, "It could not impeach the certificate in the absence of fraud on the architect's part:" No fraud or collusion on the part of the city engineer in the present case is claimed. We are clear that the court's finding that the contract was completed and the work accepted by the council on November 25, 1913, is correct under the law and the evidence. This works no hardship upon a reasonably prudent laborer or materialman. He is not required to wait for completion or acceptance of the work. He can file his claim as soon as he finishes furnishing labor or materials. Such has been our liberal construction of the statute since January 8, 1910. *Cascade Lumber Co. v. Aetna Indemnity Co.*, 56 Wash. 503, 106 Pac. 158; *McLeod v. Russell*, 59 Wash. 676, 110 Pac. 626; *Washington Monumental & Cut Stone Co. v. Murphy*, 81 Wash. 266, 142 Pac. 665.

Appellant argues that, in any event, the court erred in not entering a personal judgment against the contractor, McNerney. It is asserted that he defaulted, but there is nothing in the record to show that he was served personally with summons or that an order of default was ever entered against him. Obviously, unless he was personally served, the court had no jurisdiction to enter a personal judgment against him. In the absence of anything in the record showing that fact, we cannot assume that the court has committed the error complained of.

The judgment is affirmed.

MORRIS, C. J., MOUNT, FULLERTON, and CHADWICK, JJ., concur.