[No. 30421. Department One. June 24, 1948.]

UNITED STATES PIPE AND FOUNDRY COMPANY *et al., Appellants,* v. A. J. GOERIG *et al., Respondents.*[1]

*Merritt, Summers & Bucey* and *Cheney & Hutcheson,* for appellants.

· *Skeel, McKelvy, Henke, Evenson & Uhlmann,* for respondents.

SCHWELLENBACH, J.—This is an appeal from judgments dismissing an action, after demurrers to the complaint had been sustained, the plaintiffs having elected to stand upon their complaint.

The complaint alleged the entering into of a contract on July 14, 1945, between Goerig & Philp and the city of Sunnyside, whereby Goerig & Philp agreed to construct a sewage disposal plant for the city for the agreed contract price of $157,613.40; that between August 1, 1945, and

[1]Reported in 195 P. (2d) 91.

April 13, 1946, plaintiffs furnished supplies to the contractors, on which there is a balance owing and unpaid of $7,098.72; that said supplies were used for the benefit of and became a part of the sewage disposal plant.

That on or about the eighth day of October, 1946, and while the performance of said contract dated July 14, 1945, remained unfinished and uncompleted, the defendants, Goerig & Philp, and the defendant, city of Sunnyside, entered into a supplemental contract, whereby the said Goerig & Philp agreed to perform work unfinished under the original contract dated July 14, 1945.

That on or about the twenty-eighth day of January, 1947, and prior to the completion of the performance of the work by Goerig & Philp under the two contracts, the plaintiffs duly filed notice of claim with the city clerk, all in accordance with the provisions of Rem. Rev. Stat., § 1161 [P.P.C. § 180-47].

The complaint also alleged the execution of a performance bond, on July 16, 1945, by the Continental Casualty Company, as surety, in the sum of $157,613.40 on the first contract; and the execution of a performance bond, on November 13, 1946, by the Manufacturers' Casualty Company, as surety, in the sum of $5,000, on the supplemental contract.

Exhibit B, made a part of plaintiffs' complaint, is as follows:

"SUPPLEMENTAL CONTRACT
Contract made 8 October 1946.

"WHEREAS contract made between parties June, 1945, to construct Sewage Disposal Plant stating F.W.A. No. etc.

"WHEREAS Party of the second part has been unable to perform any substantial amount of work on the project for the past three months or four months due to inability to obtain recirculation pumps and other items essential to the full completion of the present contract, and it is the desire of the F.W.A. to terminate that contract.

"IT IS MUTUALLY AGREED by and between the parties hereto the present contract shall be terminated and this supplemental contract shall be substituted for the present contract subject to the following conditions:

"(1) The unfinished work shall be completed in accordance with the original plans and specifications.

"(2) This supplemental contract shall be in full force and effect from the date it is executed. The terms and provisions of this contract do not alter or reduce the contractor's obligations under the original contract which has been accepted as completed on October 7, 1946.

"(3) The value of the work remaining to be performed—itemized statement total $5000.

"(4) The contractor shall furnish an indorsement on his insurance.

"(5) Upon compliance with the foregoing requirements, the City will pay to the contractor on or within 15 days after November 7, 1946, the balance due less the value of uncompleted work or $5000.

"(6) Upon completion of the uncompleted work, or any part thereof, the City will pay to the contractor not oftener than once each month 85% of the value of the work performed in the preceding month. Upon full completion and acceptance of the items covered by this supplemental contract the City will pay the retainage (30) days after the completion and acceptance.

"Executed in quadruplicate.

| Address: | By | S. A. Rossier |
| Pier 65 | | Mayor |
| Foot of Lenora Street | | K. H. Stone |
| Seattle 1, Wash. | | City Clerk |

Goerig & Philp

By    A. J. Goerig

"Contract accepted by F.W.A. Nov. 27, 1946."

Rem. Rev. Stat., § 1161, provides in part:

" . . . Provided, that such persons shall not have any right of action on such bond for any sum whatever, unless within thirty (30) days from and after the completion of the contract with an acceptance of the work by the affirmative action of the board, council, commission, trustees, officer, or body acting for the state, county or municipality, or other public body, city, town or district, . . ."

Respondents claim that it appears upon the face of the complaint that appellants did not file their claim within the thirty-day period as required by the above statute so as to preserve their right of action against the respondent

bonding companies on their statutory performance bonds, and their lien upon the reserve fund in the hands of the city.

Our problem is to determine whether or not there was a completion of the contract of July 14, 1945, and an acceptance of the work by the affirmative action of the council.

In *Puget Sound Bridge & Dredging Co. v. Jahn & Bressi*, 148 Wash. 37, 268 Pac. 169, we held:

"Rem. Comp. Stat., § 1161, providing for the protection of laborers and materialmen by a contractor's bond on public work, upon their filing a claim within thirty days after 'completion of the contract with an acceptance of the work', refers to the final completion of the contract by the city or the sureties, and not to the time when the contractor abandons the work or is discharged for non-performance."

In *John Dower Lbr. Co. v. New Amsterdam Cas. Co.*, 152 Wash. 186, 277 Pac. 696, one Scott, on August 26, 1925, entered into a contract with the city of Sunnyside to drill a well. The contract provided:

" 'The price for such sinking and construction of city well to be the sum of $8 per foot, for the full depth of said well, not to exceed 1,000 feet. . . . The construction of said well shall be according to the plans and specifications prepared by the city engineer, to which reference is hereby made and considered as a part of this contract. . . .' "

The specifications, attached to, and made a part of, the contract, read in part as follows:

" 'The work herein specified to be done under the direction of the city council. . . . The well shall be drilled in a workmanlike manner; bore to be straight and of such width as will permit the installation of a twelve-inch casing to bed rock which is estimated to be about two hundred feet. The contractor shall be required to drill the well to the depth required by the city council, which depth will not exceed 1,000 feet.' "

It will be noted that the full depth of the well was not to exceed 1,000 feet. The work progressed until August, 1927, when the well had reached a depth of 1,000 feet. On August 27, 1927, the city council met and recorded the following proceedings:

" 'The meeting being called to meet with George E. Scott, the contractor on the city well and he being present, he was called upon, and stated that he had completed his present contract, being down to the 1,000-foot level, but without getting water. After a discussion, a motion was made that the city draw up another contract for an additional twenty-nine feet at the price of $17 per foot. Mr. Scott agreeing to this, the city attorney was instructed to draw up the contract and the mayor and city clerk were authorized to execute the same.' "

A short time later, it appearing that the well had not been drilled straight, the council met on November 30, 1927, and recorded the following proceedings:

" 'It was moved and carried that the mayor and attorney draw up a new contract for George E. Scott; that he get the well in proper condition to resume drilling, including reaming, and to pay Scott on the following plan: $20 a day for the use of machinery, $15 a day for labor, $5 a day for incidentals, such as fuel, and so forth.' "

In holding that there had been no acceptance of the work by the council, we said:

"We are unable to see any evidence of acceptance by the council in its recorded action of August 24, 1927, of the work under the original contract. That action seems to us to mean nothing more than an evidencing of the council's intent to proceed with the drilling of the well deeper because of the failure to procure water at the 1,000-foot level. Nor are we able to see any evidence of acceptance by the council in its recorded action of November 30, 1927. That action of the council, instead of indicating acceptance, it seems to us, evidences the council's view that the original contract was not completed in workmanlike manner as contemplated by that contract, since it had, at that time, been found, and the council then recognized, that the bore was not straight so as to render further deepening of it practical without straightening. . . . .

"Some contention is made in this connection rested upon the theory that the evidence shows, by general talk at the two council meetings above noticed, an agreement or understanding on the part of the councilmen that the drilling of the well down to the 1,000-foot level should then be considered as completed according to contract, and accepted as such. There is some evidence indicating some

such general understanding on the part of the councilmen; but we are of the opinion that such understanding was not such as to call for the holding that there was then 'an acceptance of the work by the affirmative action of the council,' as contemplated by the above quoted language of Rem. Comp. Stat., § 1161. Counsel for the casualty company cite and rely principally upon our decisions in *McGowan Bros. Hardware Co. v. Fidelity & Deposit Co.*, 84 Wash. 470, 147 Pac. 44; and *Denny-Renton Clay, etc. Co. v. National Surety Co.*, 93 Wash. 103, 160 Pac. 1. Those decisions, we think, are not controlling here. They involved a clear written acceptance by an architect or engineer who had unqualified authority to make such an acceptance. We conclude that the work of the contract secured by the bond was not accepted by the city more than thirty days prior to the presentation and filing of the lumber company's claim, as required by Rem. Comp. Stat., § 1161, above quoted."

In *Denny-Renton Clay & Coal Co. v. National Surety Co.*, 93 Wash. 103, 160 Pac. 1, where a paving contract had been entered into with the city of Wenatchee, the last piece of brick pavement was laid, grouted with cement, and covered with tarpaulin on the afternoon of November 25, 1913. On the same evening, the city engineer furnished to the contractor what is designated as the "complete estimate," certifying that the job was then "one hundred per cent completed" and that the contractor was entitled to $10,041.57, which sum was ninety per cent of the contract price then remaining unpaid. This amount was ordered paid by the council. On December 23, 1913, the city engineer filed his "final estimate" referring to the "complete estimate" of November 25th and showing the final sum due (the ten per cent balance of $16,856.17). This amount was ordered paid by the council. On January 2, 1914, the plaintiff filed its claim against the bond. This was within the thirty-day period after filing the "final estimate," but more than thirty days after filing the "complete estimate." We held, in that case:

"There can be no question but that, on November 25, 1913, the date of the engineer's complete certificate, the work was in fact substantially completed. The evidence shows that nothing further was done except what is called

'cleanup work,' such as removing unused bricks, removing the tarpaulins and sand from the pavement and removing tools and lumber used in the work. The engineer then certified that the work was completed— 'one hundred per cent complete.' Upon his finding that it was completed, he based his estimate of the sum then due—ninety per cent of the entire balance of the contract price—and certified this to the council for approval and payment by warrant. In the same certificate he included an estimate of the ten per cent to be held up under the terms of sections 6 and 7 of the contract until 'thirty days since the completion of the work has expired.' The order of the council, based upon this certificate and estimate, referred to the matter as 'work completed.' The action of the council in ordering the complete estimate of ninety per cent paid as certified by the engineer was the only action of the council ever taken directly upon this certificate of completion. That action necessarily implied an acceptance of the work as then completed as certified. If affirmative action be held now necessary, we think that this was such an affirmative recognition of the work as completed as to constitute an acceptance. The very fact that the ten per cent was held up for only thirty days after this affirmative action upon the engineer's complete estimate, when interpreted in the light of the contract (to which alone the holding up is referable, since the statute contains no authority for holding up anything for any time), is in itself a recognition by the city council that the contract had been completed thirty days before the final estimate was to be paid."

In *Seattle Plumbing Supply Co. v. Maryland Cas. Co.*, 151 Wash. 519, 276 Pac. 552, Seattle School District No. 1 had entered into a contract with P. J. Lavan in June, 1925, for the performance of plumbing work in the addition to the Franklin high school, and for the installation of a sprinkler system on the school grounds, the contract price being $5,127.

The improvement was to have been completed November 25, 1925. The plumbing work was completed, but, because of the delay of another contractor, Lavan was unable to complete the installation of the sprinkler system. He went as far as he could and then was compelled to suspend work because of the unfinished condition of the grading. On January 7, 1926, he wrote to the architect telling him

of the situation. On January 8th, the architect reported to the board as follows:

" 'Mr. P. J. Lavan's contract for the plumbing work on the Franklin high school is completed, with the exception of some 'clean-ups' and that part of the lawn sprinkler system on the south side of the building, which is not in. The contractor is unable to put it in until the grading is completed by the general contractor.

" 'If the lawn sprinkler system is not in by the time the final payment is due, then $200 will be withheld to cover the cost of the sprinkler system.

" 'I recommend the acceptance of this contract.

" 'The amount of the contract is...............$5,127.00

" 'Extras, certified to date...................  140.00

" 'Deductions to date........................  none

" 'Making a total of.........................  5,267.00' "

The same day the board adopted and recorded in its minutes the following resolution:

" 'Whereas, the contract of P. J. Lavan, covering plumbing work on the addition to the Franklin high school, in the original amount of $5,127, with certified extras amounting to $140, or a total amount of $5,267, has been reported as completed and ready for acceptance,

" 'Be it resolved, That said contract is hereby declared completed and the work accepted, subject to terms as to repair of any defective work discovered within a year, as expressed in the contract, and subject to all necessary clean-up work.' "

We held:

"Certainly the board of directors, by its affirmative action in the adoption of the resolution above mentioned, not only declared that the contract was completed, but that it accepted the work, precisely as the statute calls for. A reasonable construction of the letter from the contractor, the architect's report to the board, and the board's resolution altogether, shows that the intention of all the parties was to have the contract ended or treated as completed. Accordingly, the resolution was passed accepting the work; but, as a small portion of the work originally contemplated had not been performed, it was determined to withhold enough, finally fixed at $150, from the original contract price to meet that expense, not to be paid to Lavan on his contract because the contract was declared completed, but

to anyone who might be engaged to do that work. With this understanding, a final estimate was thereafter made and certified to by the architect upon which on February 17, 1926, more than thirty days after the completion of the contract, with an acceptance of the work by the affirmative action of the board, Lavan received, as a final payment $898.45, being the balance due on the contract including the fifteen per cent reserve fund, less the $150.

"The action of the board by its resolution, like that involved in the recent case of *Union High School District No. 400 v. Pacific Northwest Construction Co.*, 148 Wash. 594, 269 Pac. 809, was in no way conditional, but absolute; and Lavan having accepted final payment, including the fifteen per cent reserve fund, must be held to have understood and intended, as the school board did, that the contract was completed and the work accepted on January 8, 1926, the date of the resolution."

█ Appellants contend that the original contract was not completed or accepted by the city, and that the supplemental contract, between the same parties, was really a continuation of the original agreement. Respondents claim that, by the execution of the supplemental contract, the city accepted as completed the work called for in the original contract. There is considerable merit to both contentions.

Was the contract of July 14, 1945, completed on October 7, 1946, and did the council, by affirmative action, accept the work on that date?

The supplemental contract of October 8, 1946, entered into between the same parties, stated:

"It Is Mutually Agreed by and between the parties hereto, the present contract shall be terminated."

Although subd. 2 states that the original contract has been accepted as completed on October 7, 1946, the parties mutually agreed on October 8, 1946, that the present contract shall be terminated, and this supplemental contract shall be substituted for the *present* contract, subject to the following conditions:

"(1) The unfinished work shall be completed in accordance with the original plans and specifications.

"(2) This supplemental contract shall be in full force and effect from the date it is executed. The terms and provisions of this contract *do not alter or reduce the contractor's obligations under the original contract* which has been accepted as completed on October 7, 1946."

It seems to us that there is a clear distinction between the situation in this case and that arising in the *Seattle Plumbing Supply Co. v. Maryland Cas. Co.* case. There, as we said, "The board of directors, by its affirmative action in the adoption of the resolution above mentioned, not only declared that the contract was completed, but that it accepted the work precisely as the statute calls for." There, all obligations of the contractor, and all rights of the school board, under the contract, absolutely ceased.

Here, it was agreed in the supplemental contract that the unfinished work should be completed in accordance with the original plans and specifications, and that the terms and provisions of the supplemental contract did not alter or reduce the contractor's obligations under the original contract. The city did not accept the work as completed. Instead, in the supplemental contract, it recognized that the work was not completed, and required the contractor to complete the work and to carry out his obligations under the contract of July 14, 1945.

The complaint stated facts sufficient to constitute a cause of action. The demurrers should have been overruled. The judgments of dismissal are reversed.

MALLERY, C. J., SIMPSON, and HILL, JJ., concur.

MILLARD, J., dissents.