[No. 11494. Department One. February 28, 1914.]

WHEELER, OSGOOD COMPANY, *Respondent*, v. FIDELITY & DEPOSIT COMPANY OF MARYLAND, *Appellant*, THOMAS STRAUSER *et al.*, *Defendants*.[1]

STATES—BUILDING CONTRACTS—PERFORMANCE — FINAL ACCEPTANCE —ACTION ON BOND—MATERIALMAN. The architect's final certificate of construction is a conclusive acceptance of a building erected under the direction of the state board of control, where the contract gave the architect complete control of the work, and provided for payments on the architect's certificates, the final payment to be made when the work was completed, and accepted by the "owner and architect," and that no certificate except the final one shall be conclusive evidence of the performance of the contract; hence a materialman, in order to maintain an action on a bond given to secure the performance of the contract, must file a claim within thirty days after such acceptance of the work, as required by Rem. & Bal. Code, § 1161.

Appeal from a judgment of the superior court for Pierce county, Card, J., entered July 2, 1913, upon findings in favor of the plaintiff, in an action on contract, tried to the court. Reversed.

*Danson, Williams & Danson* (*Geo. D. Lantz*, of counsel), for appellant.

*B. S. Grosscup* and *W. C. Morrow*, for respondent.

MAIN, J.—The purpose of this action was to recover upon a bond given to secure the performance of a building contract.

On August 5, 1911, the state of Washington, by its board of control, contracted with T. Strauser and son, a copartnership, for the erection of the administration building for the Northern Hospital for the Insane, at Sedro Woolley. This contract was in form what is known as the "uniform contract" adopted by the American Institute of Architects and the National Association of Builders. The blank spaces were filled in with typewriting.

[1]Reported in 139 Pac. 53.

By article 9 of the contract, it is provided that the sum to be paid to the contractors was $115,000, and the manner of payment is specified as follows:

".  .  . that such sum shall be paid by the owner to the contractors in state warrants and only upon certificates of the architects, as follows: Eighty per cent (80%) of the value of labor performed and materials in place in the building as estimated by the architects every thirty days after the date of this contract, and the balance due on contract when the work is completely finished and accepted by the owner and the architects."

Article 10 of the contract is as follows:

"It is further mutually agreed between the parties hereto that no certificate given or payment made under this contract, except the final certificate or final payment, shall be conclusive evidence of the performance of this contract, either wholly or in part, and that no payment shall be construed to be an acceptance of defective work or improper materials."

The performance of the contract was secured by a bond executed by the defendant Fidelity & Deposit Company of Maryland, a corporation, as surety.

On August 10, 1911, Strauser & Son contracted with The Wheeler, Osgood Company,.a corporation, for the furnishing of all the millwork material, including glass. The price fixed in this contract for the material to be furnished was $6,400. In pursuance of the contract, the material was furnished from time to time as required. Certain payments were made thereon by Strauser & Son.

On December 6, 1912, the final certificate of the architects was issued, in which it was certified that Strauser & Son was then entitled to the payment of $23,734.71. This was the total balance due at that time upon the contract. This certificate was mailed to the board of control on December 12th. The date when it reached the board is not disclosed by the evidence. On December 2nd and 3rd, the board of control, in company with the architects, inspected the building. The board made no subsequent inspection covering the Strauser

& Son contract.  On December 13, 1912, there was received
by the board of control for audit the final estimate voucher
made by its accountant.  On December 17th the board,
through its secretary, wrote a letter to the Union Trust &
Savings Bank of Spokane, as follows:

OFFICE OF STATE BOARD OF CONTROL

Olympia, Washington, December 17th, 1912.
MR. FRANK C. PAINE, Secretary,
    Union Trust & Savings Bank,
      Spokane, Washington.

DEAR SIR: Referring to your letter of November 27th, the board's
architect and superintendent of construction have accepted the ad-
ministration building at Northern Hospital for the Insane, con-
structed by Thomas Strauser & Son, and as soon as the contractors
make settlement of premium due the state industrial insurance
commission, the final estimate will be passed.

Yours truly,
STATE BOARD OF CONTROL,
H. G. BALLOU, *Secretary.*

What interest this bank had in the transaction is not
clearly disclosed by the evidence.  The following is an excerpt
from the minutes of the board of control under date of
December 23, 1912:

"Final estimate voucher for final payment amounting to
$23,734.71 approved by state board of control December
23, 1912, and warrant number 161,582 issued covering
voucher A667."

This is the only record of any action taken by the board.
The chairman of the board of control, who was a witness,
testified that no other action had been taken by the board.
On the question why payment was delayed after the archi-
tects' final certificate had been given, the chairman of the
board testified as follows:

"Q.  Now the fact is that at all times after the architects'
certificate was given, the board of control held up the money
on that estimate for two purposes, and one was to force the
contractors to pay their industrial insurance, and the other
was to get the consent of the bond to the payment?  Mr. Mor-
row:  That is objected to as incompetent, irrelevant and

immaterial.   A.  I don't remember distinctly why payment
was delayed, except that it was a part of the contract that
they should discharge the obligation to the industrial in-
surance commission; that had not been done; we were advised
of that, and refused to make final payment until they com-
plied with that part of their contract."

On January 13, 1913, The Wheeler, Osgood Company, not
having been paid in full by Strauser & Son, filed a claim
with the board of control for the balance due.   On April 1,
1913, the present action was begun for the purpose of re-
covering upon the bond.   The cause was tried to the court
without a jury.   Judgment was entered in favor of the plain-
tiff, from which judgment the appeal is prosecuted.   The
controlling question is whether the architects' final certificate
constituted an acceptance of the building which was binding
upon the board of control.   If the final certificate operated
as an acceptance, the claim of the respondent was not filed
within the statutory time.   But if the building was not ac-
cepted until the board of control passed the final estimate
voucher on December 23d, then the claim was presented
within the thirty days provided by the statute.

The respondent does not deny that the board might have
delegated to the architects the power to accept the building,
but contends that, under the terms of the contract, it did not
do so.   Neither is there any claim of fraud, bad faith or
mistake on the part of the architects in issuing the final
certificate.

Rem. & Bal. Code, § 1161 (P. C. 309 § 97), among other
things, provides that, in order that a right against the bond
may be preserved it is necessary that a claim be filed with the
board of control "within thirty days from and after the
completion of the contract with and acceptance of the work
by the board.  . . ."

Unless article ten of the contract above quoted is limited
in its force and effect by the language used in article nine,
which provides that the balance due shall be paid "when the

work was accepted by the owner and the architects," the final certificate of the architects was conclusive evidence of the performance of the contract and would constitute acceptance binding upon the board. *Carnegie Public Library Assn. of Brownwood v. Harris*, 43 Tex. Civ. App. 165, 97 S. W. 520; *Concord Apartment House Co. v. O'Brien*, 228 Ill. 360, 81 N. E. 1038. In each of these cases there was under consideration a term of the contract in the exact language of article 10. In the case last cited it was said:

"This being so, under article 9 of the contract the granting of the final certificate was 'conclusive evidence of the performance of this contract,' and could be overthrown only by proof of fraud or mistake."

The architects were employed and paid by the board. There can be no question but what they were its agents. The building was to be constructed in accordance with the drawings and specifications prepared by the architects. Under the contract, the architects were given power to determine the true construction and meaning of the drawings and specifications, and their decision thereon was made final. Alterations could be made in the work only upon their written order. They were given the power to condemn all materials, whether worked or unworked, if the same were unsound or improper or in any way failed to conform to the drawings and specifications. And should the contractor refuse or neglect to supply skilled workmen or materials of the proper quality, or fail in any respect to prosecute the work with promptness or diligence, or fail in the performance of any of the agreements on his part made, the architects might, after three days' notice to the contractor, provide such labor and materials and charge the cost to the contractor. In addition to this, they were given the power to certify that the refusal or neglect of the contractor might be sufficient ground for the owner to terminate the contract. It is plain that, under the contract, the architects were to determine when the material furnished and the work performed satisfied the draw-

ings and specifications, and the contractor was bound by their decision.

If the architects' certificate did not constitute an acceptance of the building on the part of the board, then there might be presented a situation wherein the contractor had furnished material and performed work in exact compliance with the requirements of the architects, the agents of the owner, and yet be compelled to bring an action to compel acceptance by the owner. A contract should not be thus harshly construed unless the unequivocal language thereof manifests that such was the intention of the parties. Speaking upon this question, in *Young v. Stein*, 152 Mich. 310, 116 N. W. 195, 125 Am. St. 412, 17 L. R. A. (N. S.) 231, it is said:

"It is clear that, under this contract, the determination of the architect as to what is required of the contractor by the plans and specifications is conclusive upon the contractor, and, unless such determination is likewise conclusive upon the owner, we should have the anomalous and unconscionable result that the owner might contest the contractor's right to compensation for work performed by him precisely as ordered by the owner's agent, the architect, whose orders he was bound to obey. Such a construction of the contract ought not to be adopted unless imperatively required by its terms."

In that case, the contract contained a provision that the final payment of ten per cent be not made until the work was completed and "accepted by the owner and architect." It was also provided that the architect should certify when the work was done to his satisfaction. Construing these provisions of the contract, it was said:

"The provision in paragraph 13 'that in each of the said cases the architect shall certify in writing that all the work upon the performance of which the payment is to become due has been done to their satisfaction' indicates clearly that the acceptance 'by the owner and architect' is to be evidenced by the certificate of the architect. This certificate the contractor obtained, and, being made by the owner's unquestioned agent, acting entirely within the scope of his express

authority, it bound the owner, in the absence of any showing
of fraud or collusion, as much as though he himself had signed
it."

In *State ex rel. Murphy v. Coleman*, 71 Wash. 15, 127 Pac.
568, the city engineer, under the contract there under con-
sideration, was endowed with powers similar to those of the
architects in the present case. The contract there contained
a provision that, when the engineer's estimate was received,
the city council would proceed with the acceptance of and pay-
ment for the work, and it was held that the engineer's final
estimate, in the absence of fraud or bad faith on his part, was
binding upon the council.

In the present case, article 9 of the contract provided that
the final payment should become due when the building was
accepted by the owner and the architects. Article 10, as
already stated, endowed the architects with the absolute
power to issue the final certificate which would constitute an
acceptance. We think it must be held, considering all the
terms of the contract, that the final certificate of the archi-
tects constituted an acceptance on the part of the board, in
the absence of any showing of fraud, collusion, bad faith or
mistake. Confirmation of this view may be found in the letter
of December 17, written by authority of the board, the testi-
mony of the chairman of the board, and the passing of the
final estimate voucher. In the letter referred to, it recites
that the building had been accepted by the architects and
superintendent of construction, and that as soon as the con-
tractors should make settlement of the premium due the state
industrial insurance commission, the final estimate would be
passed. There is no reference in the letter either to any
past or future action on the part of the board independent
of the architects relative to the acceptance; and in the testi-
mony of the chairman of the board, the same reason is given
why the final payment was delayed. There was no evidence
that the board took any action relative to the acceptance of
the building other than the passing of the final estimate

voucher already referred to.  It is true that the chairman interpreted the action of December 23rd as an acceptance of the building, and it doubtless would have had that effect had not the acceptance already taken place by reason of the architects' final certificate.  But this does not establish that the previous acceptance of the architects was not binding on the board.

The respondent cites the case of *Graham v. Borough of Etna*, 79 N. J. L. 235, 75 Atl. 749, as supporting its contention.  In that case, the contract in one clause provided that payment was to be made upon the completion of the work, the certificate of the engineer, and upon the work being accepted by the mayor and city council.  Another clause in the contract provided that "all material and workmanship shall be subject at all times to the inspection and supervision of engineer and supervisor, whose decision shall be final."  It was there held that the certificate of the engineer was not sufficient, but that there must be coupled with it that of the supervisor.  The powers there conferred jointly upon the engineer and supervisor were similar to those here conferred upon the architects.  It was not there held that an acceptance by the mayor and city council was necessary under the other provision in the contract.  That case, when closely read, is an authority for the position taken by the appellant in this case, rather than against it.

It is claimed, however, that all the cases cited arose between the immediate parties to the contract, and that the rule there invoked should not apply to a third party.  In the present case, the respondent contracted to furnish the material in accordance with the plans and specifications, and the plans and specifications were made a part of the contract between the original parties.  The respondent contracted to furnish material to the principal contractor, and it would appear that the materialman would not have greater rights than the principal contractor.

The judgment will be reversed, and the cause remanded with direction to the superior court to dismiss the action.

CROW, C. J., GOSE, ELLIS, and CHADWICK, JJ., concur.