[No. 14226.    Department Two.    January 19, 1918.]

ALEXANDER PEARSON, *as Pearson Construction Company, Respondent*, v. PUGET SOUND MACHINERY DEPOT, *Appellant*, McKAY-NAVARRE PLUMBING & HEATING COMPANY, *Defendant*, UNITED STATES FIDELITY & GUARANTY COMPANY *et al., Respondents*.[1]

MUNICIPAL CORPORATIONS—IMPROVEMENTS—CLAIMS AGAINST BOND —TIME TO FILE. The fact that some work was done after acceptance of a building as completed, does not show fraud on the part of a port commission in accepting the work by a resolution which was a matter of public record, so that the filing of a materialman's lien against the contractor's bond thirty-one days thereafter was too late.

Appeal from a judgment of the superior court for King county, Frater, J., entered December 23, 1916, in favor of the plaintiff, in an action to determine the validity of claims against a contractor's bond, tried to the court. Affirmed.

*Bronson, Robinson & Jones*, for appellant.

*Arthur C. Dresbach*, for respondents.

[1]Reported in 169 Pac. 961.

MOUNT, J.—This action was brought by the respondent Pearson to require certain defendants, who were made parties, to establish their claims against a surety bond guaranteeing the construction of a building for the port of Seattle. The appellant, Puget Sound Machinery Depot, was made a party defendant in that action, and alleged, in substance, that it had furnished a boiler to be used in the construction of the building; that there was due upon the boiler something over $700; that, on June 12, 1915, it filed its claim against the bond; and it sought to have its claim against the bond established in this action. Upon a trial of the case to the court without a jury, the court concluded that the bond was not filed in time, and denied the Puget Sound Machinery Depot any relief. This appeal followed.

The facts are briefly as follows: On June 8, 1914, the Port of Seattle, a municipal corporation, let a contract to the respondent Pearson for the construction of a warm and cold storage warehouse. Pearson furnished a bond for the faithful performance of the contract and for the payment of materialmen. A part of the work was sublet to the McKay-Navarre Plumbing & Heating Company, a subcontractor. The Puget Sound Machinery Depot furnished the boiler to the subcontractor, and it appears that this boiler was not paid for. The contract between Pearson and the Port of Seattle provided that:

"In order to prevent disputes and litigation, the engineer shall in all cases be referee to determine the amount, quality, acceptability, and fitness of the several kinds of work and material to be furnished under this contract, and to decide upon all questions which may arise under or as to the fulfillment of said contract on the part of the contractor, and his decision and determination shall be final and conclusive. . . . No improvement shall be deemed completed until the same is approved and declared completed by the port commission."

This provision was also a part of the contract between Pearson and the McKay-Navarre Plumbing & Heating Company.

On May 12, 1915, the chief engineer addressed the following communication to the port commission:

"I beg to report that the Pearson Construction Co. has completed its contract No. 67, dated June 8, 1914, for the construction of the Warm & Cold Storage Warehouse at Central Waterfront Improvement and that the building is now ready for acceptance by the port commission. I recommend that the port commission accept the work under this contract subject to 10 per cent of the total amount being retained for a period of thirty days from the date of completion. Article 15 of the contract with the Pearson Construction Co. also requires that this 10 per cent reserved shall not be paid until such time as the engineer shall certify to the port commission that the thirty days have elapsed and that no defective or incomplete work has been discovered."

On the same day, upon the report of the engineer that the building was completed, the port commission, by a resolution, accepted the building, "subject to the usual thirty-day period for discovery of defects and filing of claims under the contractor's bond."

Thereafter, on June 12, 1915, the appellant filed its claim against the bond as required by Rem. Code, § 1161. This was thirty-one days after the engineer had certified that the building was completed, and after the port commission had accepted the building subject to discovery of defects. At the trial of the case, the appellant amended its cross-complaint, alleging fraud on the part of the engineer in charge of the work, and also on the part of the port commission. The appellant did not contend in the trial court and, we understand, does not contend here that its claim was filed within thirty days after acceptance of the building by the port commission. But it is claimed that there was fraud and arbitrary action on the part of the engineer and the port commission, by reason of the fact that, after this report, and

after the acceptance of the building by the port commission, some work was done upon the building. This work consisted in installing some electric wires and some work upon the sprinkler system and some fuses in the switchboard. There was no evidence whatever in the record to the effect that there was any concealment on the part of the engineer or of the port commission. The certificate of completion filed by the engineer and the resolution accepting the work were public records, and there was apparently no collusion or misrepresentation or concealment. The case falls within the rule announced in the case of *Denny-Renton Clay & Coal Co. v. National Surety Co.*, 93 Wash. 103, 160 Pac. 1. In that case, in referring to some previous cases from this court, we said:

"There is no distinction whatever between the law of those cases and the law of the case here. All arose under the same statute. From a reading of those cases it is too clear for cavil that, on the facts here, either the certificate of completion made by the city engineer on November 25, 1913, was a final acceptance in law which the city could not dispute, or the action of the council on the same evening in passing and paying the ninety per cent complete estimate was such an affirmative action recognizing the work as completed as to meet the express terms of the statute as an acceptance. In either event, as pointed out in the *Wheeler, Osgood Company* case ['78 Wash. 328, 139 Pac. 53], a legal acceptance binding as between the city and the principal contractor is binding also upon the materialman. The fact that the 'cleanup work' was done after the engineer certified that the work was one hundred per cent completed is immaterial. As we said of a similar insignificant item in the *McGowan Brothers Hardware Company* case [84 Wash. 470, 147 Pac. 44], 'It could not impeach the certificate in the absence of fraud on the architect's part.' No fraud or collusion on the part of the city engineer in the present case is claimed. We are clear that the court's finding that the contract was completed and the work accepted by the council on November 25, 1913, is correct under the law and the evidence. This works no hardship upon a reasonably prudent laborer or materialman. He is not required to wait for completion or accept-

ance of the work.   He can file his claim as soon as he finishes furnishing labor or materials.   Such has been our liberal construction of the statute since January 8, 1910."   (Citing a number of cases.)

The mere fact that some work was done on the building, even by the contractor, after the acceptance of the work by the port commission, does not raise an implication of fraud or arbitrary action.   The certificate of the engineer in charge of the work and the resolution accepting the work were public records, open to the appellant and all other materialmen.   It was their duty to know those records and to file their claims for material and labor within the time limit of thirty days. Not having done so, it is inconceivable how they can now be heard to say that there was fraud or arbitrary action when the records were open to them.   We think the court properly found that the claim was not filed in time, and that there was no fraud or arbitrary action.   The judgment appealed from is therefore affirmed.

ELLIS, C. J., HOLCOMB, CHADWICK, and MORRIS, JJ., concur.