[No. 21199. Department Two. August 21, 1928.]

UNION HIGH SCHOOL DISTRICT No. 400, WHATCOM
COUNTY et al., Respondents, v. PACIFIC NORTHWEST
CONSTRUCTION COMPANY et al., Respondents,
GEORGE V. NOLTE, Appellant.[1]

[1] SCHOOLS AND SCHOOL DISTRICTS (20)—CONTRACTS—CONTRACTOR'S
BONDS—ACCEPTANCE—TIME FOR FILING CLAIMS. There was an
acceptance of a school building, starting the commencement
of the thirty day period for the filing of claims against the
contractor's bond, under Rem. Comp. Stat., § 1161, where, upon
a report of the architect indicating completion of the building
with the exception of specified items which the contractor was
to make good, the board of trustees entered a resolution ac-
cepting the building on the architect's "recommendation," and
thirty days later the clerk of the board notified the county
auditor of the acceptance, and that the thirty-day period ex-
pired on that day.

[2] SAME (20)—POWER TO ACCEPT BUILDING. Notwithstanding the
architect's report of certain items which the contractor must
make good to complete a school building, the board of trustees
had authority to accept the building and start the running of
the thirty-day period for the filing of the claims against the
contractor's bond.

[3] NOVATION (3)—SUBSTITUTION OF NEW DEBTOR. There was a
novation, extinguishing the original indebtedness, where, upon
the failure of a corporation to pay a bill, four stockholders gave
the creditor their individual promissory notes, each for one
fourth of the debt, and the creditor accepted payments on some
of the notes.

Appeal from a judgment of the superior court for
Whatcom county, Hardin, J., entered December 7,
1927, upon findings in favor of the defendants, in ac-
tions on a contractor's bond.

*Frank W. Bixby* and *T. G. Newman*, for appellant.
*Grinstead, Laube & Laughlin* and *R. John Lichty*,
for respondents.

[1]Reported in 269 Pac. 809.

ASKREN, J.—Union High School District No. 400, of Whatcom county, Washington, had a new high school constructed in 1925 by the Pacific Northwest Construction Company, at a cost of approximately $90,000. The Fidelity and Deposit Company of Maryland issued the surety bond for the faithful performance of the contract. One William Mallis of Seattle, Washington, was the architect selected by the school board.

On November 24, 1925, the board passed the following resolution; which was duly spread upon the minutes:

"Motion by Hemingsen, seconded by Reed, that we accept the school building on Mr. Millis' recommendation. Motion carried."

On the 24th of December the clerk of the school board sent the following letter to the county auditor:

"This is to notify you that the thirty day period following the acceptance of the new Mt. Baker Union High School building by the board of directors expires today."

At that time, there were several unpaid bills upon the job, for the payment of which the surety was bound under its bond. Those claims were as follows: George V. Nolte $768.28; Rainier Electric Company $885.00; D. A. Griffin & Co., $25.80, and Thiel & Welter, $140.00; or a total of $1,819.08. On May 1, 1926, a new board of directors having been elected in the meantime, the following action was taken as evidenced by the minutes of the board:

"Motion by Mathews, seconded by Macauley, to accept the building with $272 for defects, carried."

Within thirty days thereafter, each of the four claimants just referred to filed with the board a notice in writing making a claim for the amounts due them as against the bond issued by the surety. The school

district having on hand the sum of $1,863.72 filed a complaint in interpleader on July 7, 1926, and paid the money into the registry of the court, asking the court to settle the issue as to who was entitled to the fund. A further payment of $12.00 was later added thereto. George V. Nolte, on behalf of himself and as assignee of the three other claimants, filed a cross-complaint asking for judgment against the contractor on the four claims referred to; that the amount thereof be declared a lien upon the money deposited with the court; and that, if the fund proved insufficient, that he recover from the surety any deficiency.

The surety filed an answer claiming the fund in controversy by virtue of the fact that it had been required to pay upwards of $5,000 to laborers and materialmen holding valid claims against the building, and by a valid assignment from the contractor to all money due on the contract.

The contractor answered admitting liability on three of the claims, but alleged that the claim of the Rainier Electric Company had been settled by that company accepting the notes of four individuals in payment thereof.

With the issues so made up, the case proceeded to trial. The court, after hearing, held that the four claims were not filed with the board within thirty days after the acceptance of the work, and were therefore not valid claims against the bond; awarded the fund on deposit to the surety; gave judgment against the contractor for three of the claims, but held that the Rainier Electric Company claim had been settled and refused any judgment thereon. From this disposition of the case, Nolte has appealed.

The issues in this case were narrowed in the trial court and are limited here to two questions: (1) Was the building accepted on November 24, 1925, by the

board of directors under its resolution of that date, or by the resolution of the later board on May 1, 1926; and (2), Was there a novation as to the claim of the Rainier Electric Company? The answers to these questions will determine the controversy.

[1] It is admitted by appellant that, under § 1161, Rem. Comp. Stat., it is necessary that claims be filed against the bond of a contractor within thirty days after the acceptance of the work; and therefore he strenuously asserts that the building was not accepted until the resolution of May 1, 1926. To support this assertion there was offered in evidence a letter from the architect to the school board dated November 23, 1925. It reads as follows:

Seattle, Washington, November 23, 1925

Mr. M. D. Macaulay,
Clerk School District No. 400,
Deming, Wn.

Mt. Baker Union High School Bldg.

Dear Sir:

We recommend that your board accept the General Contractors work on the above building on the following basis.

| | | |
|---|---:|---:|
| Contract price | | $86,886.31 |
| Finished hardware | $800.00 | |
| Electric fixtures | 700.00 | 1,500.00 |
| | | $85,386.31 |
| Deductions | 355.12 | |
| Additions | 346.99 | 8.13 |
| | | $85,378.13 |
| Deductions for defective shower room, plaster and boiler room floor | | 30.00 |
| | | $85,348.18 |
| Deduction by owner | | |
| Damages by delay | $170.00 | |
| Fire insurance | ...... | |
| Electrical current | ...... | |

We have not the amount of the last two items which the contractor agreed to pay.

The contractor is required to make good all the items in our letter of October first, 1925, addressed to him and all the conditions of our letter to him of this date otherwise this acceptance is null and void and all the conditions of the contract to remain in effect.

Yours truly,

WM/A          (Signed)          Wm. Mallis.

It is said that, since the letter of the architect refers to certain things that the contractor is required to do, the action of the board on the following day could be nothing more than a conditional acceptance—not to become final until the things referred to therein had been performed by the contractor.

The difficulty facing this argument is that the resolution of acceptance does not appear to be conditional. It is an absolute acceptance of the building. Appellant attempts to meet this with a construction of the words "on Mr. Mallis' recommendation." The argument is that these words require construction, and that Mallis' letter, when referred to in aid of their construction, shows that he intended only a conditional acceptance; that the board acting thereon did and could make only a conditional acceptance. In view of the fact that the resolution indicates an absolute acceptance and that, in conformity therewith, the clerk of the board served written notice on the county auditor that the 30-day period "following the acceptance" expired on November 24, it would seem perfectly clear that the acceptance was made on that date.

[2] We turn to the question of whether the board had power to make an absolute acceptance in face of the letter of the architect indicating that, at the time of writing it, there were certain things to be done by the contractor. Appellant contends that, since the contract between the school board and the contractor provided that the architect had

"  .  .  .  full power and lawful authority to reject the whole or any part or portion of said material or work which might not in his opinion be in strict accordance with the letter and spirit"

of the contract and his "opinion, certificate, report and decision on all matters to be binding and conclusive" on both parties, that the board could not, contrary to

his wishes or desires, accept the building in controversy.

But we think appellant misconstrues the purpose and meaning of these provisions. As between the parties to the contract, the decision of the architect is conclusive. But the delegation of the authority to represent the school board in the matter of the construction of the building is not a complete surrender of all power of the board. The architect is an agent of the board to act in its behalf. If he refuses a certificate because the work is not done in accordance with the contract, the contractor is bound thereby in the absence of wilful, arbitrary or capricious action on his part. If he issues such certificate, it is likewise under the same conditions binding on the board. But this would not prevent the board from accepting the work in case they desired so to do. Certainly the board can waive any provision in the contract placed there for its benefit.

The cases cited by appellant do not meet the precise question here presented. Much reliance is placed on our decision in *Wheeler, Osgood Company v. Fidelity & Deposit Co.,* 78 Wash. 328, 139 Pac. 53, where we held that claims filed more than thirty days after the issuance of the architect's certificate were filed too late. In that opinion, we used language stressing the powers of the architect and the necessity of considering his final certificate as the acceptance of the work. But in that case there was no previous acceptance by the board. The issue there was whether a final certificate of the architect under the provisions of the contract became an acceptance of the building. Here the issue is whether the board may voluntarily make an acceptance prior to the issuance of an architect's certificate. We have no hesitancy in saying that it can. The acceptance of the work being made on No-

vember 24, 1925, the thirty-day period for filing claims expired on December 24, and the later resolution of acceptance by the new board of directors on May 1, 1926, did not invalidate the first acceptance nor extend the time for filing claims against the bond.

[3] As to the second question presented, we have the following facts: After the claim of the Rainier Electric Company became due, and the contractor was unable to pay, four of the stockholders and directors of the contracting corporation went to the office of the Rainier Electric Company on February 4, 1926, and assumed the debt of $885.00, then due, and as evidence thereof each of them gave his personal note for $221.25, payable two months after date with interest at eight per cent. At the time of the trial, there had been paid the sum of $150.00 on one of the notes, and two payments of $25 each on another of the notes. None of the notes bear any statement on their face that they have been received in discharge of the lien which the Rainier Electric Company claimed to have. Rem. Comp. Stat., § 1143 provides:

"The taking of a promissory note or other evidence of indebtedness for any labor performed or material furnished for which lien is created by law, shall not discharge the lien therefor, unless expressly received as payment and so specified therein."

Appellant urges, therefore, that the notes in question do not discharge the claim of the Rainier Electric Company.

It seems to us that appellant fails to give full import to the transaction which resulted in the taking of these notes. The notes which were accepted were not the notes of the debtor. They were the individual notes of certain of the officers, and so understood to be by the Rainier Electric Company when it took them. This action resulted in four entirely new debtors. The

debt of the contracting corporation was extinguished. The acceptance of those notes was not the "taking of a promissory note or other evidence of indebtedness" within the meaning of the statute; for it manifestly contemplates a situation where the original debtor gives something to evidence the debt, such as a promissory note, and still continues to owe the debt. In such a case, the original debtor cannot defeat the lien by urging that the materialman or laborer has accepted a note in payment, unless the waiver of said lien appear upon the face of the note.

The purpose of this statute is well known. It was enacted to prevent those owing laborers and materialmen from giving their note in payment and afterwards urging that the acceptance of the note waived the lien. It was to render certain the question of whether the lien had been waived that the statute was passed.

There was a completed novation, under the rule announced in *Sutter v. Moore Investment Co.*, 30 Wash. 333, 70 Pac. 746, and *Pacific States Securities Corp. v. Austin*, 146 Wash. 492, 263 Pac. 732.

Judgment affirmed.

FULLERTON, C. J., MAIN, and BEALS, JJ., concur.

HOLCOMB, J. (dissenting)—In my opinion the acceptance of the building was merely conditional upon the approval of the architect, which manifestly was not given. I therefore dissent.