KIRKPATRICK ET AL., RESPONDENTS, *v.* DOUGLAS ET AL., DEFENDANTS, AETNA CASUALTY & SURETY CO., APPELLANT.

(No. 7,639.)

(Submitted February 11, 1937. Decided March 2, 1937.)

[65 Pac. (2d) 1169.]

*Messrs. Cooper, Stephenson & Glover* and *Messrs. Walchli & Korn,* for Appellant Aetna Casualty & Surety Company, submitted a brief; *Mr. R. H. Glover* argued the cause orally.

*Messrs. Grubb & Rockwood,* for Respondents, submitted a brief; *Mr. Forrest C. Rockwood* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

The complaint in this action contains two causes of action, each relating to a separate highway project. Under the first cause of action it was shown that on October 11, 1932, defendant A. R. Douglas was awarded and entered into a contract with the state of Montana through the State Highway Commission for the construction of a designated highway. Defendant surety company became surety on the bond furnished under section 5668.41, Revised Codes. In May, 1933, defendant Douglas made a contract subletting the work to the plaintiffs, who agreed to assume all the duties and obligations of Douglas under his contract with the state. Plaintiffs completed the work prior to August 2, 1933, and there is owing from defendants the sum of $3,813.46. On November 8 plaintiffs filed with the highway commission a notice of claim. The point of difference between the parties is whether there had been an acceptance of the work by the affirmative action of the board, council, commission, trustees, officer, or body acting for the state, within the meaning of section 5668.44 more than fifteen days prior to November 8, so as to bar the claim. The second cause of action is practically identical with the first, except that it related to a different highway project, the amount remaining due on it being the sum of $335.78.

Plaintiffs filed their notice of this latter claim on February 15, 1934, and the question arising on this cause of action is whether there had been an acceptance of the work by the

affirmative action of the proper tribunal within the meaning of section 5668.44 more than fifteen days before February 15.

Defendant Douglas, on December 13, 1933, was adjudged a bankrupt and in April, 1934, was discharged by order of court from all provable claims, including those here involved, and hence we eliminate him from further consideration.

The cause was tried to the court sitting without a jury, Honorable Asa L. Duncan, judge presiding. The judgment went for plaintiffs and against the surety company, and the appeal is from the judgment.

The defendant company contends that neither claim was filed within fifteen days after the acceptance of the work within the meaning of section 5668.44. Its contention is that the acceptance by the engineer of the commission constitutes an acceptance within the meaning of that statute.

Both contracts between the state and Douglas contain these provisions: ''Engineer'' means ''the State Highway Engineer, acting directly or through an assistant or other representative duly authorized by the state highway engineer, such assistant or representative acting within the scope of the particular duties assigned to him, or of the authority given him. 7.13. Until its acceptance by the Engineer, improvements shall be under the care and charge of the contractor. 8.9. The contract shall be considered to have been completely fulfilled when all work has been completed and accepted by the Engineer and the final estimate has been accepted by the contractor and paid. 9.8. Acceptance and Final Payment. Whenever the contractor shall have completed the work in accordance with the terms of the contract, the Engineer will make a final inspection of the work. * * * He will transmit to the contractor a claim embodying said final estimate, and will notify the contractor and his surety of the acceptance of the contract. * * * Upon return by the contractor of the accomplished final estimate claim, same shall be certified by the commission to the State Board of Examiners for payment, and payment thereof shall constitute, together with previous partial pay-

ments, full satisfaction for the total amount due under the contract.''

Section 1.17 of the contract reads as follows: ''In order to avoid cumbersome and confusing repetitions of expressions in these specifications, whenever it is provided that anything is, or is to be, or to be done, if, or as, or when, or where 'contemplated,' 'required,' 'directed,' 'specified,' 'authorized,' 'ordered,' 'given,' 'designated,' 'indicated,' 'considered necessary,' 'deemed necessary,' 'permitted,' 'suspended,' 'approved,' 'acceptable,' 'unacceptable,' 'suitable,' 'unsuitable,' 'satisfactory,' 'unsatisfactory,' or 'sufficient,' it shall be understood as if the expression were followed by the words 'by or to the Engineer with the approval of the Commission.' ''

Section 5.1 provides: ''All work shall be done under the direct supervision of the Engineer and his authorized assistants. To prevent misunderstanding and litigation, the Engineer shall decide any and all questions which may arise as to the quality and acceptability of materials furnished and work performed and as to the manner of performance and rate of progress of said work, and shall decide all questions which may arise as to the interpretation of any or all plans relating to the work and of the specifications, and all questions as to the acceptable fulfillment of the contract on the part of the contractor; and such decision shall be final and conclusive, except that the contractor shall not be estopped from resorting to legal process in the event that the decision of the Engineer with respect to the matters above enumerated is not acceptable.''

It was shown, with reference to the claim contained in the first cause of action, that Mr. H. C. Tilzey, the division engineer, inspected the work and notified the highway commission by letter that it was ''completed and accepted on August 2, 1933.'' Thereupon the State Highway Commission, through Mr. O. E. Cutting, the assistant office engineer, notified the United States Department of Agriculture, Bureau of Public Roads, at Missoula, by letter dated August 3, 1933, that the project ''has been completed and was accepted by division

engineer H. C. Tilzey for the state, August 2, 1933.'' By letter of August 30, 1933, the United States Department of Agriculture, Bureau of Public Roads, notified the highway commission that their own inspection was made on August 25th, ''and we are recommending acceptance of this project and payment of final voucher when presented in proper form.'' On September 8, 1933, the highway commission, through its accountant J. L. Maloney, sent a letter to contractor Douglas, relating to the work on this project, reading as follows:

''Attached you will find your final estimate on E. C. H. P. 260, Unit 2, in the amount of $4,731.83. As this estimate represents the final quantities and amounts due you, your signing and having acknowledged before a notary public signifies your acceptance of this amount due you in final settlement. Kindly execute same and return in order that we may be able to make final payment when Federal Funds are received and your bondsmen have approved the making of final payment.''

On the same date Mr. Maloney sent a letter to the surety company, reading: ''We are preparing estimate for final settlement with A. R. Douglas, contractor on Emergency Construction Highway Project No. 260, Unit 2, the total earnings amounting to $18,674.72. Promptly advise this department if our action meets with your approval.''

The same procedure took place with reference to the claim contained in the second cause of action. That claim, as above noted, was filed on February 15, 1934. The division engineer accepted the work on September 7 and sent a telegram to the highway commission on September 8 to the effect that it had been accepted on September 7. He confirmed this by letter of September 9 addressed to the highway commission. On September 11 the highway commission, through assistant office engineer Mr. Cutting, notified the United States Department of Agriculture, Bureau of Public Roads, that the project ''has been completed and accepted by division engineer H. C. Tilzey, on September 7, 1933.'' On September 30, 1933, the United States Department of Agriculture, Bureau of Public Roads, notified the highway commission by letter that their own in-

218

spection had been made, "and we are recommending acceptance of this project and payment of final voucher when presented in final form." On October 10, 1933, Mr. Maloney, acting for the highway commission, notified the contractor and the surety company by letters identical in form, except as to the amount stated, as those that he had sent relating to the work under the first cause of action. This was the practice pursued by that department on all of its highway construction contracts. Hence the legal question presented is whether the acceptance by the engineer constituted an acceptance within the meaning of section 5668.44, supra, so as to prevent the maintenance of this action, for concededly the claims were not filed within fifteen days after the acceptance by the engineers.

The plaintiffs take the position that, to start the running of the statute, there must have been an acceptance by the highway commission as a board or body, and that its acceptance must be manifested by some affirmative action on the part of that body, and they contend that there never has been such an acceptance, and for that reason they are not prevented from maintaining this action. If there never has been an acceptance of the work within the meaning of section 5668.44, then plaintiffs had the right to file the claims when they did, for the statute simply marks the time beyond which claims may not be filed, but does not undertake to prohibit the filing of claims before an acceptance of the work. (*Cascade Lumber Co.* v. *Aetna Indemnity Co.*, 56 Wash. 503, 106 Pac. 158; *National Surety Co.* v. *Holliday Co.*, 42 Wyo. 407, 295 Pac. 913; *California Portland Cement Co.* v. *Boone*, 181 Cal. 35, 183 Pac. 447; *Live Oak Lumber Co.* v. *Farr*, (Cal. App.) 152 Pac. 311; Id., 28 Cal. App. 641, 153 Pac. 741.) There is authority to the contrary. (See *Callaghan* v. *Continental Casualty Co.*, 110 N. J. Law, 390, 166 Atl. 83.) The weight of authority, and we think the better reasoned cases, support the view that a claim filed before the acceptance may be made the foundation of an action.

This brings us to the vital question in the case: Whether there had been an acceptance of the work more than fifteen days before the claims were filed within the meaning of section 5668.44.

The word ''acceptance,'' as used in statutes such as our section 5668.44, contemplates a final, complete, and unconditional acceptance. (*Yale & Towne Mfg. Co.* v. *Aetna Casualty & Surety Co.*, 110 N. J. Law, 592, 166 Atl. 473; *Johnson Service Co.* v. *American Employers' Ins. Co.*, 113 N. J. Law, 494, 174 Atl. 756.) While the statute involved in the case of *Board of Education* v. *Southern Surety Co.*, 76 Utah, 63, 287 Pac. 332, was worded somewhat differently from ours, it supports the view that there can be no final acceptance or ''settlement,'' as the statute there provided, while there was still a dispute as to the amount owing on the contract.

The case of *Perkins Builders' Supply & Fuel Co.* v. *Independent School Dist.*, 206 Iowa, 1144, 221 N. W. 793, 794, involved a statute requiring claims to be filed ''any time before the expiration of thirty days immediately following the completion and final acceptance of the improvement.'' The court there held that final acceptance could be shown otherwise than by formal resolution of the board, saying: ''It is true, as stated by the appellants in their argument, that there is no formal resolution by the board, which in terms shows the completion and final acceptance of the improvement; but said facts can be otherwise shown. Under the facts as disclosed by the record, there can be no doubt that the building was completed and accepted by the board at the time of the authorizing of the aforesaid final payment.''

In the case of *Guaranteed Gravel & Sand Co.* v. *Aetna Casualty & Surety Co.*, 174 Minn. 366, 219 N. W. 546, 548, the statute required claims to be filed within ninety days ''after the completion of the contract and acceptance of the building'' by the proper public authorities. The court held that under that statute acceptance could be otherwise than by formal motion or resolution, saying: ''While an acceptance does not require the formal acceptance by motion or resolution passed by the

board in session, it does require an act with intent to receive the building as its own as a compliance with required duty of the contractor. An acceptance may be expressed by words or by conduct.''

Defendant relies largely upon cases from the state of Washington. Prior to 1915, the Washington statutes required claims to be filed ''within thirty (30) days from and after the completion of the contract with and acceptance of the work by the board, council,'' etc. (Rem. & Bal. Code, Wash., sec. 1161.) Under that statute the supreme court of the state of Washington held that the acceptance by the architect who had control over the work constituted an acceptance on the part of the state board of control. (*Wheeler, Osgood Co.* v. *Fidelity & Deposit Co.*, 78 Wash. 328, 139 Pac. 53. To the same effect is *Union Iron Works* v. *Strauser*, 82 Wash. 51, 143 Pac. 446, and *McGowan Bros. Hardware Co.* v. *Fidelity & Deposit Co.*, 84 Wash. 470, 147 Pac. 44.) In 1915 (Laws 1915, p. 62) the Washington statute was amended and reads exactly as does our section 5668.44, except that it allows thirty days, while our statute allows but fifteen. In *Denny-Renton Clay & Coal Co.* v. *National Surety Co.*, 93 Wash. 103, 160 Pac. 1, 3, the facts arose, and the judgment appealed from was entered, prior to the amendment of 1915, but the court referred to the amendment. In that case the engineer in charge of the work certified that the work was ''one hundred per cent. complete.'' He certified to the council for approval his estimate of the sum then due, being 90 per cent. of the contract price; the other 10 per cent. he certified to be held up until ''thirty days since the completion of the work has expired.'' The court, in discussing the question whether there had been an acceptance, said: ''The action of the council in ordering the complete estimate of 90 per cent. paid as certified by the engineer was the only action of the council ever taken directly upon this certificate of completion. That action necessarily implied an acceptance of the work as then completed as certified. If affirmative action be held now necessary, we think that this was such an affirmative recognition of the work as completed

as to constitute an acceptance. The very fact that the 10 per cent. was held up for only thirty days after this affirmative action upon the engineer's complete estimate, when interpreted in the light of the contract (to which alone the holding up is referable, since the statute contains no authority for holding up anything for any time), is in itself a recognition by the city council that the contract had been completed 30 days before the final estimate was to be paid.''

In *Title Guaranty & Surety Co. v. Coffman, Dobson & Co.,* 97 Wash. 211, 166 Pac. 620, the court held that if the engineer was not given authority under the contract to accept the work, then his acceptance did not start the running of the statute, but that the statute started to run when the highway commissioner took formal affirmative action accepting the work. Where cases have arisen in Washington since the statute was amended in 1915, even though the contract purported to delegate authority to some individual to accept the work, there appears to have been some formal action taken by the board or public body. (*Pearson* v. *Puget Sound M. Depot,* 99 Wash. 596, 169 Pac. 961; *Union High School Dist.* v. *Pacific N. W. Const. Co.,* 148 Wash. 594, 269 Pac. 809; *Seattle Plumbing Supply Co.* v. *Maryland Casualty Co.,* 151 Wash. 519, 276 Pac. 552; *Pratt* v. *Pautzke,* 174 Wash. 171, 24 Pac. (2d) 442.) A general understanding of the council that the work is accepted is not sufficient to start the running of the statute. (*John Dower Lumber Co.* v. *New Amsterdam Cas. Co.,* 152 Wash. 186, 277 Pac. 696.)

It is fair to assume that the reason for the amendment of the Washington statute was to change the law that the acceptance by the engineer would start the running of the statute. If that is not the reason for the amendment, then there would appear to be no reason for it. Likewise the fact that our legislature adopted the amended statute, rather than the statute involved in the earlier Washington decisions, is persuasive that it was desirous of a different rule from that promulgated in the early Washington decisions.

Here, while the contract, as above noted, gave broad powers to the engineer in the matter of accepting the work, it also appears that such acceptance by him was not final so far as the commission was concerned. The commission reserved the right to overturn the findings of the engineer. The contract in this respect provided: " * * * And the commission shall have the right to reject the whole or any part of the aforesaid work or materials, should the said measurement, estimates, certificates, or payment be found or be known to be inconsistent with the terms of the contract or otherwise improperly given, and the commission shall not be precluded or estopped, notwithstanding any such measurement, estimate, certificate and payment in accordance therewith, from demanding and recovering from the contractor and his surety such damages as it may sustain by reason of his failure to comply with the terms of the specifications and contract. Neither acceptance by the commission, the engineer, or any agent or employee of the commission nor any certificate by the commission for payment of money, nor any payment and no acceptance of the whole or any part of the work by the commission or engineer * * * shall operate as a waiver of any portion of the contract or of any power herein reserved by the commission, or any right to damages herein provided." Likewise, section 1.17 of the contract indicates that the commission retained final approving authority over the acts of the engineer.

Under our statute (sec. 1783, Rev. Codes) the engineer of the highway commission is treated as an employee of the commission. Section 1784, relied upon by defendant, has by implication been partially repealed by the later statute, section 1783. The commission itself must let all contracts (sec. 1790) and require the execution of a bond (sec. 5668.41). We think also that, while the commission may require the engineer to inspect the work and either accept or approve it, the action of the engineer is simply a guide to aid the commission in the performance of its official acts. Section 5668.44 requires affirmative action of the commission itself to start the running

of the statute. The commission can act officially only when convened as a board or commission. (*State ex rel. Matson* v. *O'Hern,* 104 Mont. 126, 65 Pac. (2d) 619.) The statute, unlike the Iowa and Minnesota statutes involved in the cases heretofore referred to, requires "affirmative action."

It may be that the acts of the engineer, acquiesced in by the commission, would estop the commission from claiming that it had not accepted the work, as between it and the contractor. (Compare *Clifton, Applegate & Toole* v. *Big Lake Drain Dist.,* 82 Mont. 312, 267 Pac. 207.) But in order to start the running of the statutory period of fifteen days in favor of the surety on the bond, and as against the subcontractors and materialmen, the commission itself, being the "board, council, commission, trustees, officer or body acting for the state," must take some affirmative action constituting an acceptance of the work by it. It is true that the early Washington decisions held that an acceptance binding between the contractor and the public body doing the work, was also binding on materialmen (*Wheeler, Osgood Co.* v. *Fidelity & Deposit Co.,* supra; *Denny-Renton Clay & Coal Co.* v. *National Surety Co.,* supra), but those decisions were based upon the statute before the amendment, and it does not follow that a different rule would not now be announced by that court under the amended statute.

It is our view that by section 5668.44, Revised Codes, the legislature intended that the barrier there provided for should not depend upon implication, silent acquiescence, or other acts falling short of "affirmative action," which might operate as an acceptance between the state and the contractor, but that it can only be erected by some positive, affirmative action marking a definite and certain time when the limitation starts to run. The custom and practice of the commission to rely upon the acceptance of its engineer cannot override the positive mandate of the statute requiring affirmative action of the commission, except as it may serve to preclude it from questioning the conclusion of the engineer as between the state and the contractor.

While the statute involved is not the same, yet what the ▮ court said in *United States* v. *Robinson*, (C. C. A.) 214 Fed. 38, and which was quoted with approval by the supreme court of Utah, in *Campbell Building Co.* v. *District Court*, 63 Pac. (2d) 255, 257, we believe has application here. The court there said: "We take it that these italicized words [*complete performance of the contract and final settlement thereof*] refer to the time when the proper government officer, who has the final discretion in such matters, after examination of the facts, satisfied himself that the government will accept the work, as it is, without making any claim against the contractor for unfinished or imperfect work, damages for delay or what not, and records that decision in some orderly way." The official having the final discretion under our statute is the highway commission. That commission, or board, has not accepted the work in question by affirmative action within the meaning of section 5668.44, supra.

Other questions raised by defendant surety company are all determined adversely to its contention by what we have already said. The court was correct in finding that under the facts the action is not barred by section 5668.44, and the judgment is accordingly affirmed.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES STEWART and ANDERSON concur.

MR. JUSTICE MORRIS, deeming himself disqualified, takes no part in the foregoing decision.