H. EARL CLACK COMPANY, Appellant, v. STAUNTON
ET AL., Respondents.

(No. 7,664.)

(Submitted April 7, 1937. Decided May 4, 1937. Resubmitted September 22, 1937. Final Decision November 2, 1937.)

[72 Pac. (2d) 1022.]

376

Mr. Max P. Kuhr, for Appellant, submitted an original brief and a brief on Petition for Rehearing, and argued the cause orally.

Mr. John L. Slattery and Mr. W. J. Tighe, for Respondents, submitted a brief; Mr. Slattery argued the cause orally.

On re-argument, above counsel for Respondents, in conjunction with Messrs. Cooper, Stephenson & Glover, Mr. Wellington D. Rankin and Mr. John D. Stafford, submitted an additional brief; Mr. R. H. Glover and Mr. Rankin, arguing the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This action was tried to the court without a jury. The court found for defendants and the plaintiff appealed from the judgment. The facts are these:

Defendant Staunton entered into a written contract with the state, acting through the highway commission, to construct a certain designated highway in Toole county. The contract, so far as material on the point we are now to consider, contained these provisions:

"The contractor further covenants and agrees that he will well and truly pay all laborers, mechanics, subcontractors and material men who perform work or furnish material under this contract, and all persons who shall supply him and/or the subcontractors with provisions, provender and supplies for the carrying on of the work. * * *

"The contractor shall not sublet any portion of the contract without the previous written consent of the commission. Consent on the part of the commission will be given only when in its opinion the best interests of the state will be served by so doing. The subletting of any or all of the work will in no way

relieve the contractor of any responsibility under his contract and the commission may for cause order any or all sub-contracts cancelled and the sub-contractors removed from the work. Any loss or damage that may be suffered on account of such action shall be borne by the contractor. Sub-contractors will be recognized only in the capacity of foremen or responsible employees of the contractor; and except as such they shall have no relations with the commission.

"Each and every sub-contract shall be in writing and shall provide that the work be performed in accordance with all the provisions of the agreement or contract obligating the general contractor. Certified copies of all sub-contracts shall be furnished to the commission for approval before execution by the parties to such sub-contract and a copy of such approved sub-contract shall be filed with the commission after execution by the parties thereto."

The contract also contained this clause: "It is expressly understood and agreed by and between the parties hereto that as a condition precedent to the complete execution of this contract, the contractor will furnish a good and sufficient surety bond in the amount of One hundred sixteen thousand six hundred twenty-two and 33/100 Dollars ($116,622.33) to be conditioned upon the faithful performance of the covenants and agreements as herein set forth by him to be performed, subject to the approval by the Chairman of the State Highway Commission and the Attorney General of the State of Montana."

Defendant surety company became surety on the bond furnished pursuant to, and conditioned as required by, section 5668.41, Revised Codes, reading in part as follows:

"Whereas, it was one of the conditions of the award of the State Highway Commission, acting for and on behalf of the State of Montana, pursuant to which said contract was entered into, that these presents should be executed:

"Now, therefore, the condition of this obligation is such that if the above bonded 'principal' as contractor shall in all respects faithfully perform all of the provisions of said contract, * * * and shall well and truly pay all laborers, mechanics,

sub-contractors and material men who perform work or furnish material under said contract, and all persons who shall supply him or the sub-contractor with provisions, provender and supplies for the carrying on of the work, * * * then this obligation to be void or otherwise to be and remain in full force and virtue.''

Thereafter Staunton entered into a contract with the Cascade Construction Company, a Montana corporation, whereby that company agreed to perform a designated part of the work involved in the construction of the highway project, consisting of hauling road material, at the agreed price of $\frac{1}{2}$ cent a hundred feet. It was stipulated that all work should be done in accordance with the specifications set forth in the contract between Staunton and the state. This agreement also contained this clause, ''It is further agreed and understood that as a part of the consideration of this contract, the said party of the second part (being the Cascade Construction Company) shall act as superintendent herein for said party of the first part (being Staunton) and without further compensation.'' Whether this contract obtained the written consent of the highway commission does not appear, but it was shown that it was filed with that commission.

Plaintiff furnished to the Cascade Construction Company petroleum products for carrying on its work on the highway. It was paid some on account, but there is a balance due for which recovery is sought in this action.

The crucial point in the case is whether it was incumbent upon plaintiff to give the notice prescribed by section 5668.42, Revised Codes. That section reads: ''Every person, firm or corporation furnishing provender, provisions, materials or supplies to be used in the construction, performance, carrying on, prosecution or doing of any work for the state, or any county, city, town, district, municipality or other public body, shall not later than seven (7) days after the date of the first delivery of such provender, material, supplies or provisions to any subcontractor or agent of any person, firm or corporation having a subcontract for the construction, performance, carrying on, prose-

cution or doing of such work, deliver or send by registered mail to the contractor a notice in writing stating in substance and effect that such person, firm or corporation has commenced to deliver provender, provisions, materials or supplies for use thereon, with the name of the subcontractor or agent ordering or to whom the same is furnished, and that such contractor and his bond will be held for the same, and no suit or action shall be maintained in any court against the contractor or his bond to recover for such provender, provisions, material or supplies, or any part thereof, unless the provisions of this Act have been complied with.''

The court found that plaintiff failed to comply with this section of the statute, and it is quite clear from the findings of fact and conclusions of law that recovery was denied mainly because of that fact.

Plaintiff contends that in view of the contract between Staunton and the state making subcontractors employees of the contractor, and in view of the contract between the Cascade Construction Company and Staunton, wherein Staunton agreed that the construction company was his superintendent, and Staunton's agreement to pay all persons who should furnish the subcontractor with supplies, no notice was required to be given under section 5668.42. It relies, in the main, upon certain decisions of the supreme court of Washington, from which state our statute was adopted with but slight changes. (*Kirkpatrick* v. *Douglas*, 104 Mont. 212, 65 Pac. (2d) 1169.) The supreme court of Washington has held under statutes practically identical with ours, that unless the consent of the commission or board to the subletting is had, and unless the subcontract is filed, the notice required by the statute need not be given. (*Cascade Const. Co.* v. *Snohomish County*, 105 Wash. 484, 178 Pac. 470.) When the consent is not obtained, the subcontractor becomes in legal effect the agent of the contractor. (*Crane Co.* v. *Musgrave & Blake*, 102 Wash. 59, 172 Pac. 866.)

Here, as above noted, the subcontract was filed with the highway commission, and for the purposes of the case we may assume that the highway commission consented to the sub-

letting. By the terms of the contract, there was expressly established the relationship of principal and agent between Staunton and the Cascade Construction Company, and Staunton expressly agreed to pay all persons furnishing supplies to the Cascade Construction Company, and we need not here base the agency upon the failure to obtain the consent of the highway commission. That this action is one on contract has already been held. (*H. Earl Clack Co.* v. *Staunton*, 100 Mont. 26, 44 Pac. (2d) 1069.)

This case is identical with that of *Rachow* v. *Philbrick & Nicholson*, 148 Wash. 214, 268 Pac. 876, 877. There the contract between the state and the contractor provided:

"Responsibility nontransferable:

"XIII. The contractor shall not let, assign, or transfer this contract, or any interest therein or any part thereof, without the consent, in writing of the state highway engineer. The contractor shall give his personal attention to the work at all times, and shall be present, either in person or by duly authorized representative, on the site of the work continually during its progress, and shall receive instructions from the state highway engineer. Any subcontractor shall be considered the agent of the contractor, and the latter shall be responsible for any indebtedness incurred by such agent. If any subcontractor fails to perform his work in a satisfactory manner, his subcontract may be terminated by the state highway engineer."

There, as here, there was subletting. In that case it appeared by stipulation that the state never consented to or recognized the subcontracts, but that does not appear to be the basis for the decision. The court held that the statutory notice need not be given, and apparently based its decision on the fact that by the terms of the contract the subcontractor was the agent of the contractor, and the contractor assumed responsibility for debts created by the subcontractor. The court in that case said: "Wholesome and necessary as the statutory notice is, we cannot hold that the party most to be benefited thereby may not, as was done here, contract directly with the state, that, in the absence of consent by the state, any person with

whom he may subcontract shall be his agent, and he will be responsible for any indebtedness contracted by such agent." That the contract was the basis of the decision appears from the case of *Niemi* v. *Brewster*, 154 Wash. 181, 281 Pac. 488, 490, where, in speaking of the *Rachow Case*, the same court said: "In the *Rachow Case*, the construction contract with the state in terms provided that: 'Any subcontractor shall be considered the agent of the contractor, and the latter shall be responsible for any indebtedness incurred by such agent.' In that case it was held that by reason of this express contract obligation the principal contractor waived the right to notice as required by section 1159–1."

Defendants attempt to distinguish the *Rachow Case* from the instant one because of the provision in the contract in the *Rachow Case*, reading, "and the latter [being the contractor] shall be responsible for any indebtedness incurred by such agent." But here, too, there was this positive promise by the contractor in the following words: "The contractor further covenants and agrees that he will well and truly pay all laborers, mechanics, subcontractors and material men who perform work or furnish material under this contract, and all persons who shall supply him and/or the subcontractors with provisions, provender, and supplies for the carrying on of the work." True, the contract involved in the *Rachow Case* gave the agent a wider scope of authority than the contract here in that, in that case, the contractor assumed responsibility for "any indebtedness" incurred by the subcontractor, whereas the contract here limited the agency so that the principal's or contractor's responsibility was confined to such liability as arose from the furnishing of supplies, provisions, and provender to subcontractors. But this difference does not alter the result so far as the case here under consideration is concerned, for here the action is based upon an indebtedness for furnishing supplies to a subcontractor—a matter expressly covered by the contractor's written contract.

It is contended that, even though defendant Staunton agreed to pay those furnishing supplies to subcontractors, and even

though he agreed that subcontractors should be treated as his agents, still it must be held that the parties had section 5668.42 in contemplation, and that the notice there prescribed should still be given. The case of *American Surety Co.* v. *Clarke*, 94 Mont. 1, 20 Pac. (2d) 831, and others of like import, are relied upon as sustaining this contention. We do not agree with that contention. As pointed out in *H. Earl Clack Co.* v. *Staunton*, 100 Mont. 26, 44 Pac. (2d) 1069, the statute does not impose upon the contractor the obligation to pay for supplies furnished to sub-contractors, but does impose upon him the duty of furnishing a bond conditioned that he will do so. The contract thus went beyond the requirements of the statute and evinces a purpose to protect laborers and those furnishing supplies to subcontractors by voluntary contract rather than by operation of law. This purpose, the evidence shows, was at least partially carried out by the fact that Mr. Staunton paid laborers employed by the subcontractor. Without the agreement to pay such material-men there may be imposed upon the contractor an involuntary obligation by the mere matter of giving the requisite statutory notice. But, if this obligation is voluntarily assumed by contract, as it was here, there is no necessity to resort to the statutory method of invoking the involuntary obligation.

As stated above, this case is identical with the *Rachow Case*.

Since we adopted the Washington statute after its interpretation by the supreme court of that state, our legislature presumably adopted the construction placed upon it. (*Esterly* v. *Broadway Garage Co.*, 87 Mont. 64, 285 Pac. 172.) It follows that it was unnecessary to give the notice provided for in section 5668.42. A person may either by implication or agreement waive the advantage of a law intended solely for his benefit, as here. (Sec. 8742, Rev. Codes; *Anaconda C. M. Co.* v. *Ravalli County*, 56 Mont. 530, 186 Pac. 332; *Shea* v. *North-Butte Min. Co.*, 55 Mont. 522, 179 Pac. 499.)

The court erred in denying relief to plaintiff for failure to give this notice.

Defendants contend that the theory that no notice was necessary was not relied upon by plaintiff in the court below,

and that it is not permitted to change its theory here. The fact of agency and of Staunton's obligation in the contract to pay all persons furnishing subcontractors with supplies was pleaded in the complaint, and hence there is no merit in the contention that plaintiff has changed its theory of the case.

Defendants likewise point out that the evidence shows that ▆ the supplies in question were sold, not to the subcontractor, but to the truck drivers, and that the subcontractor deducted from the wages of such drivers the amount owing for supplies, and that therefore the subcontractor was merely the agent of plaintiff to collect for the supplies. This does not alter the question of the liability of the contractor and the surety on his bond. While the facts in the following cases are not exactly the same as here, we think they sustain the right of recovery in this case where, concededly, plaintiff has not been paid for the supplies used on the construction: *Western Steel Casting Co.* v. *Edland,* 187 Wash. 666, 61 Pac. (2d) 155; *George T. Miller Const. Co.* v. *Standard Oil Co.,* 205 Ind. 509, 185 N. E. 639, 91 A. L. R. 1025.

The only other point raised is based upon this finding of ▆ the court: ''That in so executing said subcontract, the subcontractor, during said period of performance, purchased gasoline, lubricating oil, grease and motor vehicle repairs from the plaintiff, some of which was actually used by the subcontractor in the prosecution of its work under said contract, and some of which was used by the subcontractor for other purposes than in the prosecution of its work under said subcontract; that the proportion of such merchandise so purchased, and which was used in the prosecution of such work, does not definitely appear from the evidence.''

Plaintiff contends that the evidence is sufficient to establish prima facie that all of the supplies furnished by it to the Cascade Construction Company went into the project, except $400 thereof. The balance due on plaintiff's account was shown to be $11,132. Plaintiff conceded that some of the supplies were not used on the project in question. The most favorable witness for plaintiff on this point testified: ''All of this gasoline and

other supplies, grease and oil and accessories, which are contained in this account, was used in the construction of the road work being performed by the Cascade Construction Company at that point during that period of time, except what was put in service cars. As to what these service cars were, they had them to go back and forth to the works with; some of them used them to go to Great Falls or different places. A portion of these service cars would be used in hauling supplies back and forth on the project. You inquire whether all the balance of the gas and other supplies was used on that project other than what was supplied to service cars or part of it. They had some trucks they moved from the Sunburst project over to—I believe it was Glacier Park; they got gas and they went over and never came back; and then along in the fall he sent a couple of trucks on two or three trips over to an oil well. Not any gasoline or supplies were used for any other purpose, other than on this project; it was all used on the project. Probably around $400 of the entire account of gasoline and other supplies was used for some purpose other than the construction of this project under contract to the Cascade Construction Company.''

We think the court's finding on this point must be sustained. Plaintiff should at least make it clear by proof that not to exceed a certain and definite sum went on projects other than the one in question here, in which event it would be entitled to recover the balance.

Since the case was tried to the court without a jury, defendants made no motion for nonsuit, as doubtless they would have done had the case been tried to a jury. It is apparent that plaintiff is entitled to recover at least a part of the amount sought. We shall therefore consider the court's finding as tantamount to the granting of a motion for nonsuit, and will remand the cause for a new trial.

ASSOCIATE JUSTICES STEWART and ANDERSON, HONORABLE GUY C. DERRY and HONORABLE FRANK P. LEIPER, District Judges, sitting, respectively, in place of CHIEF JUSTICE SANDS and MR. JUSTICE MORRIS, disqualified, concur.